907 F.2d 546
 59 USLW 2211, 30 Fed. R. Evid. Serv. 1193
 FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the
FSLIC Resolution Fund, (substituted for Federal
Savings and Loan Insurance Corporation,
etc.,) Plaintiff-Appellee,
v.
John A. MMAHAT and Mmahat & Duffy, Defendants-Appellants.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the
FSLIC Resolution Fund, (substituted for Federal
Savings and Loan Insurance Corporation,
etc.,) Plaintiff-Appellant,
Cross-Appellee,
v.
NEW ENGLAND INSURANCE CO., Defendant-Appellee, Cross-Appellant.
 No. 89-3160.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 3, 1990.
 
 Richard T. Simmons, Jr., William R. Seay, Jr., Hailey, McNamara, Hall, Larmann & Apale, Metairie, La., for Mmahat Groups.
 John A. Mmahat, Mmahat & Associates, Ltd., Metairie, La., pro se.
 James C. Gulotta, Jr., Phillip A. Wittman, Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, La., for FSLIC.
 James P. Murphy, Paul E. Guterman, Squire, Sanders & Dempsey, Harry Quillian, Gen. Counsel, Federal Home Loan Bank Bd., Washington, D.C., for plaintiff-appellee.
 Domald A. Hammet, John V. Baus, Jr., Metairie, La., for New England Ins.
 Thomas S. Rees, Trial Atty., Jeffrey Axelrad, Director, Jerome A. Madden, Sr., Trial Atty., Torts Branch, Civ. Div., Dept. of Justice, Eugene J. Comey, Robert F. Schiff, Tuttle & Taylor, Washington, D.C., for FDIC.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before GARZA, SMITH and BARKSDALE, Circuit Judges.
 GARZA, Circuit Judge:
 
 
 1
 General counsel for a now-defunct savings and loan, and his law firm, were found liable for legal malpractice through a jury verdict for $35 million. The district court held that their conduct was excluded from their malpractice insurance coverage. 97 B.R. 293. Because the law firm was adjudged dishonest by the jury, we AFFIRM the exclusion from coverage, but we REMAND this cause to the district court to give credit for amounts paid by settling defendants before trial.
 
 FACTS
 
 2
 John Mmahat, a partner in Mmahat & Duffy, was general counsel for Gulf Federal, a federally-chartered savings and loan, for over twenty years. He even served as chairman of the board for six years in the early 1980s. Gulf Federal began to sustain losses in the residential lending market, and by 1982 was insolvent. Because the Garn-St Germain Depository Institutions Act of 1982 let S & L's lend more freely and widely, Gulf Federal began making commercial loans rather than merge with a more sound institution.
 
 
 3
 About this time, the Federal Home Loan Bank Board (the "FHLBB") restricted the amount any S & L could lend to any one borrower. 12 C.F.R. Sec. 563.9-3. An S & L could lend only a certain percentage of its net worth or withdrawable accounts under these "loans to one borrower" or LTOB restrictions. Gulf Federal's LTOB limit was $200,000 (later $500,000).[1] But Gulf Federal, under Mmahat's direction, violated the LTOB regulations on a regular basis, even after warnings by the FHLBB. In fact, Mmahat specifically instructed the board of directors "never [to] turn a loan down because it is over our loans to one customer limits."
 
 
 4
 Those commercial loans followed the path of many of their brothers in the mid-1980s, and Gulf Federal fell under the weight of the defaults. The FDIC sued Mmahat for malpractice in advising Gulf Federal to make all those loans in violation of the LTOB regulations.[2] At trial, the evidence showed that Mmahat had encouraged the loans so that his law firm could make fees on the closings. As a result, the jury found Mmahat and his firm liable for $35 million in bad loans.[3] Though the jury found in specific interrogatories that Mmahat & Duffy had committed malpractice and breached their fiduciary duty to Gulf Federal, there was no evidence that anyone at the firm, other than Mmahat, had done any culpable acts.
 
 
 5
 The court below found, however, that FDIC could not recover from New England Insurance Co. ("New England"), Mmahat & Duffy's insurance carrier, as their acts fell under a "dishonesty exclusion," which read:
 
 III. EXCLUSION:
 
 6
 The policy shall not indemnify the Insured for any damages or claim expenses as the result of any claim:
 
 
 7
 A- that results in a final adjudication that any Insured has committed a dishonest, fraudulent or malicious act, error, omission or personal injury with deliberate purpose and intent. Nothing contained in the foregoing shall exclude coverage to any other Insured who is not so adjudged to have committed any such act, error, omission or personal injury as described above.
 
 
 8
 Claiming that Mmahat & Duffy was not "dishonest," and that the policy should cover its vicarious liability, FDIC brought this appeal. Mmahat and Mmahat & Duffy also appeal the jury's liability verdict.
 
 DISCUSSION
 I. Appeal of Liability
 
 9
 Mmahat and Mmahat & Duffy appeal--on multiple points--the jury's finding of liability for malpractice and breach of fiduciary duty.
 
 A. Contribution of Settling Defendants
 
 10
 Several officers and directors of Gulf Federal settled with the FDIC at or before trial for some $1.9 million, but the jury was not given an interrogatory to determine what portion of ultimate fault should be attributed to them. Mmahat complains that was error; under Louisiana law he is entitled to a proportionate reduction of his liability by the percentage of fault attributed to the settlors. La.Civ.Code Ann. art. 1804 (West 1988); Nance v. Gulf Oil Corp., 817 F.2d 1176, 1180-81 (5th Cir.1987).
 
 
 11
 The FDIC concedes that Mmahat is entitled to some credit for the amounts paid by the settling defendants, but since "[f]ederal law governs the rights of the FDIC," FDIC v. Lattimore Land Corp., 656 F.2d 139, 143 n. 6 (5th Cir.1981), they urge us to adopt a federal common law rule to govern this type of case and insure uniformity in similar suits tried nationwide. Under FDIC's proposed pro tanto rule, Mmahat would get a dollar-for-dollar credit for any amount paid by the settling defendants.[4] The Second Circuit has adopted the pro tanto approach where interests of uniformity in a federal case mandate application of a federal common law. Singer v. Olympia Brewing Co., 878 F.2d 596, 600 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990).
 
 
 12
 Mmahat had the burden at trial of proving the settlors' share of fault, but the court below found that there was insufficient evidence in the record to permit a finding of proportionate fault. This finding makes the proportionate reduction v. pro tanto inquiry moot, so we will not resolve it here, but we are left with a question of double recovery. Because the money paid by the settling defendants and recovery from Mmahat overlap, we feel Mmahat should get credit for the amount paid. We therefore remand this issue to the district court to determine what portion of the amount paid by the settlors is attributable to the seven loans Mmahat was sued on, and give Mmahat a dollar-for-dollar credit on that amount.
 
 B. Discharge in Bankruptcy
 
 13
 Mmahat filed for bankruptcy protection after this suit was filed but before trial; the district court lifted the automatic stay and consolidated the actions. Because the jury found that Mmahat had breached a fiduciary duty, the court found that the judgment was not dischargeable because of his bankruptcy. The bankruptcy code excepts from discharge acts committed by "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. Sec. 523(a)(4). Mmahat argues that the exception should not apply since there was no "acquisition or use of property that is not the debtor's." Boyle v. Abilene Lumber, Inc., 819 F.2d 583, 588 (5th Cir.1987).
 
 
 14
 FDIC argues that there was defalcation: Mmahat urged Gulf Federal to make improper loans so that he could earn fees. Mmahat thereby enriched himself at the cost of Gulf Federal's assets. Carey Lumber Co. v. Bell, 615 F.2d 370, 376 (5th Cir.1980). We agree. Mmahat cannot discharge this judgment in bankruptcy.
 
 C. Prescription
 
 15
 Mmahat and New England argue that FDIC's claim was prescribed by Louisiana law before FDIC took over Gulf Federal as receiver. Torts such as malpractice are covered by a one year limitations period in Louisiana. La.Civ.Code Ann. art. 3492. Taken alone, that period seems to bar the claims today.[5] But in a legal malpractice action, the doctrine of contra non valentem tolls the limitations period until the attorney-client relationship ends. Montgomery v. Jack, 556 So.2d 267 (La.App. 2d Cir.1990), cert. denied, 559 So.2d 1377 (La.1990). In this case, the relationship ended when Gulf Federal went into receivership.
 
 
 16
 Mmahat argues that contra non valentem did not apply because he did not conceal facts which would have put the FDIC on notice of the malpractice. But FDIC did not own, nor could it enforce the claims until it took over as receiver; no amount of notice would have allowed FDIC to sue before that time. Further, the only court to address this issue held that when the government acquires a cause of action from an institution, limitations begins to run as figured from the perspective of the institution, not the regulators. FDIC v. Buttram, 590 F.Supp. 251, 254-55 (N.D.Ala.1984). And we agree with the Buttram court.
 
 
 17
 Because we find that contra non valentem tolled the limitations clock on this action until the attorney-client relationship ended at receivership, we affirm on this point. This action was not prescribed when FDIC stepped in.
 
 D. Conduct of Trial
 
 18
 The trial court allowed several witnesses to give opinion testimony even though FDIC's pre-trial order listed them as fact, not expert, witnesses. Mmahat argues this was an abuse of discretion, but we do not agree. Fed.R.Evid. 701 allows even lay witnesses to give opinion testimony that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." It was clearly within the trial court's discretion to allow the witnesses to give opinion testimony.
 
 
 19
 Mmahat also argues that the court below erred in admitting into evidence certain FHLBB examination reports, prepared without Gulf Federal's knowledge before it went into receivership. Specifically, the documents contained hearsay statements from Joseph Mmahat--John's brother--opining that Mmahat encouraged improper loans so his law firm could make fees. The document itself was admissible as a public record, but Fed.R.Evid. 805 demands that all hearsay within a document have its own exception. Because Joseph Mmahat was himself still a defendant at the time the document was introduced into evidence, it was clearly admissible as a non-hearsay admission under Fed.R.Evid. 801(d)(2)(A).[6]
 
 E. Counter-Claims
 
 20
 Mmahat brought a series of state law counter-claims against FDIC for negligent regulation. In essence, Mmahat claims the FDIC should be liable for failure to put Gulf Federal into receivership sooner. The district court dismissed the claims because they addressed discretionary functions and so were excepted from the Federal Torts Claims Act ("FTCA"). 28 U.S.C. Sec. 2671 et seq. That exception to the FTCA reads, in pertinent part:
 
 
 21
 The provisions of [the FTCA] shall not apply to(a) Any claim based upon an act or omission of an employee of the government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C. Sec. 2680(a).
 
 
 22
 Mmahat argues that the discretionary function exception does not apply to negligent regulation of a financial institution, and cites Gaubert v. U.S., 885 F.2d 1284 (5th Cir.1989). In Gaubert, we held that the FHLBB could lose the protection of the exception if it went beyond discretionary acts and began day-to-day management of a financial institution. Id. at 1290. But Mmahat's reliance on Gaubert is misplaced. There, we found that over-interference can take regulators outside the discretionary function exception; here, Mmahat wants us to take the FDIC out of the exception for failure to interfere. We decline to do so, and affirm the district court on this point.[7]
 
 F. Legal Malpractice
 
 23
 Mmahat argues that there was insufficient evidence to sustain the jury's finding of legal malpractice, because there was no evidence that he gave advice specifically on the seven loans at issue in this case. We will not disturb the jury's verdict unless, considering the evidence in the light most favorable to the FDIC, the facts and inferences point so overwhelmingly to Mmahat that reasonable jurors could not have arrived at a verdict except in his favor. Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc., 630 F.2d 250, 268-69 (5th Cir.1980).
 
 
 24
 Striving to meet his burden of proof on appeal, Mmahat cites examples of certain officers and directors who did not hear or follow his advice on certain specific occasions. We do not find those examples sufficient to overcome the verdict of a correctly instructed jury. We likewise reject New England's complaint that Mmahat acted not as attorney but as chairman of the board, and therefore could not have committed legal malpractice as a matter of law. The jury's verdict will stand.
 
 G. Jury Instructions
 
 25
 Finally, Mmahat and the firm argue that the court below incorrectly instructed the jury as to proximate cause, failure to mitigate damages, and the attorney-client relationship. We find that the court gave full and complete instructions on each of the issues, and defer to the district court's broad discretion to formulate a charge. U.S. v. Graves, 669 F.2d 964, 970 (5th Cir.1982).
 
 II. Insurance Coverage
 
 26
 The district court found that Mmahat had been adjudged "dishonest" when the jury found he breached his fiduciary duty to Gulf Federal, so his conduct was excluded from the New England policy's coverage. Further, the court held that since the jury also found that Mmahat & Duffy had breached its fiduciary duty, it was excluded from coverage as well. Finally, the court held that, if the policy did apply, the aggregate limits ought to be paid, and not the individual act sum.
 
 A. Dishonesty of the Firm
 
 27
 FDIC does not challenge the district court's finding of dishonesty as to Mmahat. Rather, they argue that Mmahat & Duffy cannot be held "dishonest" as they are liable only vicariously and did no culpable acts outside of Mmahat's personal participation. The policy's dishonesty exclusion has a safety hatch for "innocent co-insureds" who are "not so adjudged to have committed" a dishonest act. But this is not just an issue of vicarious liability; here the firm was adjudged dishonest: the jury found specifically that Mmahat & Duffy had breached its fiduciary duty.
 
 
 28
 In Ashland Oil, Inc. v. Miller Oil Purchasing Co., Inc., 678 F.2d 1293 (5th Cir.1982), the president, vice-president and three managers of a company conspired to commit an environmental tort. We held there that the conduct was excluded from insurance coverage because the conspiracy was not "the unauthorized intentional act of an individual employee," but was a "deliberate execution of a preconcerted plan, conceived in the mind of [the company] and carried out by a central nervous system of key [company] personnel." Id. at 1317. Here, though only Mmahat himself did the culpable acts, they weren't one-time, individual acts. Nor were they unauthorized. Rather, they were continuing and planned, made up a large portion of firm revenue, and were the pet of Mmahat, who was nothing if not key personnel at the firm.
 
 
 29
 The FDIC argues that acts of one player, no matter how key in the firm's structure, cannot transfer dishonesty absent something more. Rivers v. Brown, 168 So.2d 400 (La.Ct.App. 3d Cir.1964), cert. ref'd, 247 La. 250, 170 So.2d 509 (La.1965) (company not excluded from coverage by assault by president and major shareholder), and Baltzar v. Williams, 254 So.2d 470 (La.Ct.App. 3d Cir.1971) (town not excluded by violence of sheriff's deputy). But Mmahat's systematic and pervasive wrongdoing in this case is completely distinguishable from the one-time outbursts at issue in an assault and battery setting, such as Rivers and Baltzar.
 
 
 30
 Had FDIC not asked the jury whether Mmahat & Duffy breached its fiduciary duty to Gulf Federal, the firm would not have been "adjudged dishonest," and we might not be here today. But, as the district court correctly pointed out, FDIC "was not content to rest its case on whether Mmahat and his firm were guilty of malpractice solely because of improper advice.... Rather, [FDIC] included in its argument and evidentiary presentation to the jury the claim that Mmahat and his firm breached their fiduciary duties as lawyers because of actions taken to generate fees." We will not let FDIC undo what it has wrought.
 
 
 31
 We are now in the throes of an S & L crisis, and the final bill of failures like Gulf Federal is sure to touch us all for years to come. Mmahat and others like him played a big part in that crisis by recklessly granting commercial loans against general banking wisdom, and they are rightly being called on to pay for those errors. But worthy as the cause may be, we will not stretch this insurance policy to help pay the bill. We affirm the district court's exclusion of coverage.
 
 B. Aggregate Coverage Limits[8]
 
 32
 The New England policy has a $1 million limit for single claims and a $2 million limit for aggregate claims. The district court held that the aggregate limit applied, as there were multiple instances of malpractice. New England argues that the single limit ought to apply, as Mmahat carried out a series of related acts, which constitute a single claim under the policy.
 
 
 33
 New England cites Gregory v. Home Ins. Co., 876 F.2d 602 (7th Cir.1989), where the single limit applied though there were multiple plaintiffs. But there the insured had done only one act--prepared a brochure and tax opinion--that had harmed many. Still, Gregory helps us by defining "related acts:" they are acts which are "logically or causally connected." Id. at 605. So, if Mmahat's opinions and advice to Gulf Federal were logically or causally connected, they were related acts and the single claim limit ought to apply.
 
 
 34
 The FDIC has maintained throughout that Mmahat gave all his LTOB advice towards one end: generate fees for his firm. New England argues that his acts were, then, logically and causally connected and the single limit applies. But a single motive does not make a single act. Eureka Fed. S & L Ass'n v. American Cas. Co. of Reading, Pa., 873 F.2d 229 (9th Cir.1989) (single aggressive marketing plan does not make multiple bad loans one loss for insurance aggregation purposes). We have three discrete acts of malpractice here: (1) failure to advise of the existence and applicability of LTOB regulations; (2) giving wrong advice as to the amount of the LTOB limit; (3) giving wrong advice as to the aggregate LTOB limits when the borrowers had common ownership. And those discrete acts of malpractice resulted in discrete losses on seven loans. For this reason, and because insurance policies should be construed against the carrier, we affirm on this point. The aggregate limit should apply.
 
 CONCLUSION
 
 35
 Because we find that FDIC is not entitled to double recovery of the amount paid by settling defendants, we REMAND this case to the district court to determine what portion of that settlement relates to the loans at issue in this case. Mmahat and the firm should then get a dollar-for-dollar credit for that amount. For the reasons stated above, the judgment of the district court is in all other things AFFIRMED.
 
 
 
 [1]
 The "one borrower" definition includes any person who owns more than 10% of a corporate borrower. For example, if Individual A borrowed $100,000, and B Corp. (of which A owned 15%) borrowed $100,000, then A would have an aggregate of $200,000 in loans
 
 
 [2]
 FDIC is successor to FSLIC in this action by virtue of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183 (Aug. 9, 1989). For ease of understanding, we will use "FDIC" to denote all federal regulators involved here
 
 
 [3]
 The $35 million represents seven specific loans that were made in violation of the LTOB restrictions, and whose default contributed to the collapse of Gulf Federal
 
 
 [4]
 For example, assuming A and B are co-defendants, under a pro tanto rule, if A settled for $1000 before trial, then B would get a $1000 credit on whatever amount the jury assessed against him. Under Louisiana's proportionate reduction rule, if $50,000 were assessed against B, and A were found to be 25% at fault, B would get a $12,500 credit (25% X $50,000). But because A and the plaintiff had settled, A would not be liable for more in damages
 
 
 [5]
 The FDIC gets the benefit of an extended limitations period which begins to run from the time it takes over as receiver. 28 U.S.C. Sec. 2415. Because we find that limitations here was tolled until FDIC came in as receiver, we need not address whether the FDIC's extended period would have revived an already-prescribed claim
 
 
 [6]
 FDIC argues here that the documents are admissible as factual findings from an investigation made pursuant to authority granted by law. Fed.R.Evid. 803(8)(C). That exception may well apply to the documents themselves, but it would not solve the "hearsay within hearsay" problem, were that problem not already solved. Though factual findings are admitted by Fed.R.Evid. 803(8)(C), hearsay statements contained in the report are not. McClure v. Mexia Indep. School Dist., 750 F.2d 396, 401-02 (5th Cir.1985). For a discussion of the admissibility of conclusory reports and construction of the term "factual finding," See, McCormick on Evidence, Sec. 316 (3d ed. 1984)
 
 
 [7]
 Not only is Gaubert inapposite here, but it perhaps should be cited with care in any case. The Supreme Court has granted certiorari in that case, so Gaubert as we know it may not be with us long. See, U.S. v. Gaubert, --- U.S. ----, 110 S.Ct. 3211, 110 L.Ed.2d 659 (1990)
 
 
 [8]
 This point is moot as to Mmahat and Mmahat & Duffy, whose conduct is excluded from coverage, aggregate or otherwise, as discussed above. But FDIC is currently in litigation against Peter Duffy, who, as a Mmahat & Duffy partner, may be personally liable for the firm's actions. If he is held liable, the New England policy may well apply to him as an innocent co-insured. So, since this show won't be over until the fat lady sings, we will address this issue now