**RESOLUTION TRUST CORPORATION as Conservator of Security Homestead F.S.A.**

v.

**INTERNATIONAL INSURANCE COMPANY d/b/a Crum & Forster, et al.**

**Civ. A. No. 89–4020.**

United States District Court, E.D. Louisiana.

July 1, 1991.

Frank Massengale, James McMichael, Marie Stroud, Liskow & Lewis, New Orleans, La., for Resolution Trust Corp. as Conservator of Sec. Homestead F.S.A.

Scott Crawford, Phillip Preis, Housan Fenner, Preis & Crawford, Baton Rouge, La., for Intern. Ins. Co.

Fredrick Stoller, Edward McCloskey, McCloskey, Langenstein & Stoller, New Orleans, La., for Martin.

Rader Jackson, Shushan, Meyer, Jackson, McPherson & Herzog, Harry Zimmerman, Barley & White, New Orleans, La., for Faia.

Paul Bonin, Leonard Levenson, Levenson & Bonin, New Orleans, La., Albert Widmer, Metairie, La., for Pringle.

Russell Kahn, Paul Debaillon, Debaillon, Debaillon & Kahn, Lafayette, La., for Carstens.

Robert Kerrigan, Ellis Murov, Deutsch, Kerrigan & Stiles, New Orleans, La., for Gaudet, Hindermann, and Miranne.

Kay Austin, Edwin Preis, Preis & Kraft, Baton Rouge, La., for Watsky.

### Order and Reasons

PATRICK E. CARR, District Judge.

These consolidated civil actions are before the Court on the plaintiff's motions to strike affirmative defenses of prescription [and] laches [Record Document Nos. 106 and 156]. The Court earlier took the motions under submission without oral argument and now GRANTS IN PART and DENIES IN PART both motions.

### I.

The RTC is asserting a host of Louisiana state-law claims for alleged wrongdoings by various former officers and directors of Security Homestead Association ("Old Se-

curity"), a defunct savings and loan institution chartered under Louisiana law.

The RTC now moves to strike all affirmative defenses of prescription and laches on the ground that, in this particular case, these defenses could not succeed under any possible finding of facts. The pleadings reveal the following chronology:

1/83–4/84 Under its Board of Director's directions and approval, Old Security allegedly bought ten participation interests in interim construction loans throughout the country, bought a loan from a Baton Rouge bank, and issued a line of credit to a California company named IMI.

3/86 Old Security filed the instant suits against International Insurance Company, its D & O liability carrier.

5/89 The FSLIC was appointed conservator of Old Security.

8/07/89 The FSLIC was appointed receiver of Old Security, Security Homestead Federal Savings Association ("New Security") was chartered, various assets including this lawsuit were transferred to New Security, and the FSLIC was also appointed conservator of New Security.

| | |
|---|---|
| def. George Martin: | 2/88 |
| def. Louis Gaudet: | 6/89 |
| def. Lucien Miranne: | 6/89 |
| def. Richard Hindermann: | 6/89 |

8/09/89 Congress passed FIRREA, which abolished the FSLIC and substituted the RTC in its place as receiver of Old Security and conservator of New Security. *See* 12 U.S.C. § 1441a(b)(3)(A), (b)(6).

7/90 The RTC as conservator of New Security amended its complaint to name four Old Security directors (George Martin, Louis Gaudet, Lucien Miranne, and Richard Hindermann) and four Old Security non-director officers (Kenneth Faia, Frank Pringle, Dan Watsky, and Henry Carstens) as additional defendants.

The RTC's amended complaint alleges that these eight individual defendants along with seven non-defendant directors were negligent and breached both fiduciary and contract duties to Old Security when they approved or recommended the twelve transactions at issue. The RTC was careful not to allege fraud, dishonesty, or intentional misconduct by any of these officers or directors.

In memoranda in support of its motion, the RTC states that the eleven directors who are named in its amended complaint resigned from their directorships at Old Security in the following months:

| non-def. | Eugene Antoine: | 5/89 |
|---|---|---|
| | Sidney Barthelemy: | 5/89 |
| | Sidney Campbell: | 3/89 |
| | Russell Cuoco: | 5/89 |
| | Leonard Dousan: | 5/89 |
| | Richard Paddison: | 6/89 |
| | Leonard Wolff: | 11/85 |

The RTC's memoranda also state that the four non-director officer defendants resigned in July 1985. Further, the RTC's memoranda identify at least one other director during this period: Lawrence Junker, who resigned or died in 11/87. None of the defendants appears to dispute these dates.

## II.

■ Congress has enacted specific provisions on the limitation periods that apply to cases such as here. Specifically, in FIRREA, Pub.L. 101–73, § 212(a) (Aug. 9, 1989), Congress amended 12 U.S.C. § 1821(d)(14) to provide:

**(14) Statute of limitations for actions brought by conservator or receiver**

**(A) In general**

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [Federal Deposit Insur-

ance] Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

**(B) Determination of the date on which a claim accrues**

For the purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

While these provisions refer only to the FDIC (and not to the RTC), Congress at the same time in 12 U.S.C. § 1441a(b)(4) made these provisions applicable to the RTC as well.

Under § 1821(d)(14)(B)(i), the federal limitation period here did not begin to run until, *at the earliest,* May 11, 1989, when the FSLIC was appointed the conservator of Old Security. *See RTC v. Krantz,* 757 F.Supp. 915, 921–22 (N.D.Ill.1991), *adhered to on motion to reconsider,* 1991 U.S. Dist. LEXIS 2763, at *1, 1991 WL 35514, at *1 (N.D.Ill. Mar. 11, 1991); *FDIC v. Howse,* 736 F.Supp. 1437, 1446 (S.D.Tex.1990); *see also RTC v. Interstate Federal Corp.,* 762 F.Supp. 905, 908 (D.Kan.1991). Under § 1821(d)(14)(A)(ii)(I), the federal limitation period was, *at the shortest,* three years from that May 1989 date. Because the RTC asserted all its claims within three years of May 11, 1989, no possibility exists that the federal limitation period expired here.

The defendants cite several non-Fifth Circuit cases to suggest otherwise. On the one hand, recent dictum from the Fifth Circuit implicitly rejects any such suggestion. *See FDIC v. Mmahat,* 907 F.2d 546, 551 n. 5 (5th Cir.1990) ("The FDIC gets the benefit of an extended limitations period which begins to run from the time it takes over as receiver. 28 U.S.C. § 2415."), *cert. denied,* —— U.S. ——, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991); *see also FDIC v. Former Officers & Directors of Metropolitan Bank,* 884 F.2d 1304, 1309 n. 4 (9th Cir. 1989) (collecting cases and siding with the FDIC), *cert. denied sub nom. Lee v. FDIC,* —— U.S. ——, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). On the other hand, the defendants' cases do not concern the specific, unambiguous terms in this new RTC/FDIC limitation statute, which expressly provides when the limitation period begins to run. *Cf. Howse,* 736 F.Supp. at 1447 (the FIRREA amendment resolved the circuit split under § 2415).

Thus, it is immaterial for prescription purposes whether federal banking regulators may have been fully aware of any potential claim well before the FSLIC took over in May 1989. *See also Mmahat,* 907 F.2d at 551. In other words, the RTC is wholly correct that, at least for prescription purposes, any discovery about these regulators' knowledge is irrelevant and could not reasonably lead to admissible evidence on prescription.

 But the Court's inquiry does not stop here. It is a separate issue—not yet addressed by the Fifth Circuit, *cf. id.* at 551 n. 5—whether these federal limitation provisions may revive claims that had prescribed under state law by the time the FSLIC was appointed Old Security's conservator in May 1989. The sole published cases to address this issue under the new statute—*Interstate Federal,* 762 F.Supp. at 908–09; *Krantz,* 757 F.Supp. at 921; and *FDIC v. Cherry, Bekaert & Holland,* 742 F.Supp. 612, 617 (M.D.Fla.1990)—all answer the question in the negative.

These three courts looked to various pre-FIRREA cases addressing analogous issues under the general federal limitation

statute, 28 U.S.C. § 2415,[1] which similarly provides for six- and three-year limitation periods for claims by a government agency. According to those earlier cases, a cause of action that is governed by 28 U.S.C. § 2415 and that the government has acquired from a private party is not revived by virtue of that statute if the cause of action had already prescribed under state law by the time the government acquired the cause of action. *See Metropolitan Bank,* 884 F.2d at 1309 n. 4; *FDIC v. Hinkson,* 848 F.2d 432, 434–35 (3d Cir.1988); *FDIC v. Consolidated Mortgage & Finance Corp.,* 805 F.2d 14, 17 n. 4 (1st Cir.1986); *cf. Guaranty Trust Co. of New York v. United States,* 304 U.S. 126, 142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938); *United States v. Sellers,* 487 F.2d 1268, 1269 (5th Cir.1973). The language of 28 U.S.C. § 2415 parallels the language of 12 U.S.C. § 1821(d)(14) in that § 2415 provides that applicable claims must be "filed within [either six or three] years after the right of action first accrues." In short, the three cases' analogy to these earlier cases is persuasive, nor does the RTC argue otherwise.

Thus, the Court must turn to the central dispute here: whether any possibility exists that at least some of the RTC's claims had prescribed under Louisiana state law by the time the FSLIC took over Old Security in May 1989.

While not using the RTC's express words "adverse domination," Louisiana follows a parallel doctrine of equity through its *contra non valentem* prescription doctrine. *See generally Plaquemines Parish Comm'n Council v. Delta Development Co.,* 502 So.2d 1034, 1054–60 (La.1987). The doctrine "halt[s] the running of a prescription period in four instances:

(1) where some legal cause prevents the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2) where some condition coupled with the contract or connected with the proceedings prevents the creditor from suing or acting;

(3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; or

(4) where the cause of action is not known or reasonably knowable by the plaintiff and plaintiff's ignorance is not attributable to his own willfulness or neglect."

*Edmundson v. Amoco Production Co.,* 924 F.2d 79, 82 (5th Cir.1991). While the four categories are generally useful, their exact parameters are not rigid; "the equitable nature of the circumstances in each individual case has determined the applicability of the doctrine." *Plaquemines Parish,* 502 So.2d at 1056 n. 52.

No Louisiana court appears to have yet addressed the doctrine in the context of a corporation or bank suing its own directors or officers for their negligence or breach of contractual or fiduciary duties as its directors or officers;[2] thus, the exact contours of Louisiana's doctrine remain to be determined. The Court now turns to the facts at issue here.

■ Where an insurer is timely sued but its insured is not, prescription for the insured is interrupted only for an amount equal to the insurer's *in solido* liability. *See Anderson v. Scambria,* 310 So.2d 128 (La.App. 4th Cir.), *writ denied,* 313 So.2d 835 (La.1975). *See generally* La.Civ.Code art. 1799 (formerly art. 2097). In other words, timely suit against International Insurance does not, of itself, defeat these individual defendants' prescription defenses as to any liability for which Internation-

---

**1.** That general statute expressly states that it applies "except as otherwise provided by Congress." The new provisions in 12 U.S.C. § 1821(d)(14) constitutes just such an exception. Thus, 28 U.S.C. § 2415 does not itself apply here. *But see Cherry,* 742 F.Supp. at 615–16.

**2.** *Gravois v. New England Insurance Co.,* 553 So.2d 1034 (La.App. 4th Cir.1989), addressed the issue of *contra non valentem* in a corporation's claim against a person who had been both its attorney and one of its officers. The court's discussion of how it was applying the doctrine is too sparse to determine accurately the extent of the court's holding vis-a-vis corporate officers (as opposed to corporate attorneys).

al Insurance does not owe coverage. Because International Insurance has pleaded coverage defenses (the merits of which the Court cannot now determine), the Court must thus determine whether suit against each individual defendant was timely irrespective of Old Security's having first sued International Insurance.

■ Conversely, the direct action against International Insurance for its coverage to any particular insured was timely if and only if prescription against that particular insured had not yet run under Louisiana law by the time International Insurance was sued in March 1986. *Cf. Levron v. Bonin,* 448 So.2d 211, 213 (La.App. 1st Cir.1984). Thus, as to International Insurance, the Court must determine whether prescription could possibly have run as to any of the eight individual defendants (or as to any of the seven non-defendant insured directors also alleged at fault in the RTC's amended complaint) as of March 1986.

The parties dispute whether the RTC's breach-of-fiduciary-duty claims are governed by one- or ten-year prescriptive periods and whether the RTC in fact has any valid contract claims. *Compare Jolley v. Welch,* 904 F.2d 988, 995 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 762, 112 L.Ed.2d 781 (1991) *with Levy v. Billeaud,* 443 So.2d 539, 545 (La.1983). Because the Court finds as explained below a factual dispute in applying one-year period under La.Civil Code article 3492 for the RTC's negligence tort claims, the Court need not resolve these collateral disputes at this time.

■ The RTC effectively posits two theories for rejecting the individual defendants' defenses: first, as long as some or all of the persons alleged to have been at fault constitute a majority of Old Security's board, prescription did not commence to run against Old Security and in favor of any defendant; and second, prescription did not commence run as to any defendant during the period that that person remained an officer or director of Old Security. The Court turns to these two independent arguments.

### A.

If a majority of Security's directors were at fault here as alleged, then—the RTC suggests—Old Security itself could not have filed suit against any director or officer: inasmuch as an institution acts by and through its board of directors, which in turn acts on the decisions of its voting majority, *see generally* La.R.S. 6:708(A), it would be unreasonable to presume that these majority directors at fault would have authorized suit against themselves or any of their joint cohorts in any such fault. Until a majority of Old Security's directors authorized Old Security to have an attorney to bring suit against anyone, then—the RTC continues—Old Security was in effect powerless to sue. In effect, the RTC argues that the second category of *contra non valentem* applies as to all defendants on the ground that a majority of the directors [3] alleged to have been at fault here did not resign until after May 1988 (that is, one year before the FSLIC was appointed conservator of Old Security).

In response, the defendants assert that the federal banking regulators were fully aware of the alleged problems with the various loans and transactions over a year before Old Security first sued International Insurance and that these regulators were free to compel Old Security to sue its officers and directors at that earlier time. The Court must flatly reject this argument, even if the assertion is true. As already suggested above at pages 4–5, the issue of prescription for the period before the FSLIC was first appointed conservator does not turn in any degree on what any federal banking regulators may or may not

---

**3.** The RTC would have the Court presume that the nine directors it lists as having resigned after May 1988 constituted a majority of Old Security's board members. Inasmuch as a state homestead association may have up to 25 board members, *see* La.R.S. 6:708(A), and the record here does not otherwise reveal how many total board members Old Security had, it would be improper for the Court to make this presumption at this time. The Court's ruling does not, however, turn on this easily verifiable, but not yet verified point.

have known; the focus is solely on Old Security itself. Not until the FSLIC was finally appointed conservator of Old Security could the FSLIC (or some other federal banking regulating agency) itself in its own name commence suit on behalf of Old Security. While the federal banking regulators may perhaps have been empowered to compel Old Security's board of directors (or other person with authority to authorize suit by Old Security) to authorize suit against any particular person (an issue this Court does not decide), Old Security itself still could not commence suit without action by its board members (or other authorized person)—whether that action was wholly voluntary or legally compelled on the part of some or all of the board members (or other authorized person).

Likewise, the Court must reject the defendants' argument that *contra non valentem* cannot possibly apply here because Old Security sued its own D & O carrier, International Insurance. Suit against the insurer does not necessarily show that the directors might have also brought suit against themselves personally; if anything, suit against the insurer alone supports the RTC's contention that adverse domination in fact existed, especially here where the alleged total liability appears to exceed International Insurance's policy limits and where International Insurance has not unconditionally admitted coverage for the fifteen named officers and directors.

While the Court rejects the defendants' arguments, two principal issues nonetheless preclude the Court from summarily rejecting all prescription defenses at this time based on the RTC's sensible "board majority" argument.

On the one hand, the RTC presumes that Old Security could file a suit *only if* a majority of its board directors specifically authorized *that particular* suit. The Louisiana Savings and Loan Association Law, La.R.S. 6:701 *et seq.*, imposes no such express requirement. At this pre-discovery stage, the Court may not presume that

neither Old Security's articles of incorporation nor its by-laws delegated general authority for commencing suits to a board committee, to the board president,[4] or to some other person. *Cf. Ware & Wingate Co. v. Wingate*, 495 So.2d 1334, 1336 (La. App. 3d Cir.1986) (noting that a single corporate officer once had authority to pursue a legal action, but that such authority had been withdrawn by a corporate resolution).

On the other hand, the RTC presumes that a finding of liability against any one defendant will necessarily mean that a majority of Security's directors were at fault. There is, however, no basis for accepting the presumption *at this time.* For the Court cannot conclude on the pleadings that the factfinder at trial might not find just one individual defendant (or even just one non-defendant insured) was negligent or in breach of his fiduciary duties to Security. Thus, the Court cannot apply the RTC's "board majority" argument at this time.

### B.

Alternatively, the RTC asserts that as a matter of Louisiana law, prescription did not commence run as to any individual defendant (and by extension as to International Insurer as that person's insurer) during the period that that person remained an officer or director of Old Security.

The RTC admits that the four non-director officer defendants (Faia, Pringle, Watsky, and Carstens) and director/president defendant Martin all resigned over a year before the FSLIC was appointed conservator. Thus, this alternative argument cannot apply to these five defendants' own prescription defenses. Nonetheless, the Court must still address the argument for these five inasmuch as none of these five resigned more than a year before Old Security sued International Insurance in March 1986; in other words, the Court must determine whether International Insurance might have a valid prescription

---

**4.** Since June 22, 1989, the president of a Louisiana homestead association has generally been authorized to commence suit on the institution's behalf without specific, express board approval.

*See* La.R.S. 6:714(F) (added by La.Acts 1989, No. 133, § 1). This statutory authorization, however, arose after the FSLIC took over Old Security in May 1989 and thus does not apply here.

defense in its capacity as insurer for any of these five persons.[5]

In *FDIC v. Mmahat,* the Fifth Circuit rejected the prescription defense that the defendant, an attorney for a savings and loan institution that the FDIC had taken over, was asserting in the FDIC's legal malpractice action. The court stated: "in a legal malpractice action, the doctrine of *contra non valentem* tolls the limitations period until the attorney-client relationship ends." *Mmahat,* 907 F.2d at 551 (citing *Montgomery v. Jack,* 556 So.2d 267, 271 (La.App. 2d Cir.), *writ denied,* 559 So.2d 1377 (La.1990)). The RTC argues, first, that this rule is a *per se* rule and, second, that this rule should apply equally to a bank's claims against its officers and directors. The defendants dispute both points. To resolve the dispute, the Court must look to the origin of the pre-existing rule applied in *Mmahat.* The Louisiana caselaw addressing *contra non valentem* in legal malpractice actions fall into two general categories.

On the one hand, there are cases such as *Plaquemines Parish,* 502 So.2d 1034, which addressed the egregiously fraudulent conduct of Leander Perez Sr. and Jr., who as successive district attorneys had acted as the plaintiff's attorneys and actively thwarted efforts to have other persons represent the plaintiff and/or learn about the Perez family's secret interests in the mineral-rich properties at issue. The Louisiana Supreme Court held that this case fell within *contra non valentem*'s third category, which unlike the fourth, more typical category does not turn solely on when the cause of action becomes "known or reasonably knowable" to the plaintiff. *See id.* at 1056–60. This third

category requires evidence of bad faith or fraud. *See Edmundson,* 924 F.2d at 83. Here, however, the RTC has specifically avoided alleging that any defendant acted in bad faith or with fraudulent intent.

On the other hand, there are cases such as *Blanchard v. Reeves,* 469 So.2d 1165 (La.App. 5th Cir.), *writ denied,* 476 So.2d 347 (La.1985), and progeny.[6] In each of these cases, a plaintiff was suing his former attorney for the attorney's negligent handling of an earlier case that the attorney had unsuccessfully brought on the plaintiff's behalf; in none were there any allegations of intentional wrongdoing by the attorney. These cases base their apparently *per se* rule—that the running of prescription is suspended while the attorney-client relationship exists—on the premise that a non-lawyer client may reasonably assume that his attorney knows the law and will pursue the client's claim diligently and competently. In short, then, these cases effectively rely on *contra non valentem*'s fourth category for this *per se* rule.

A significant difference exists between the instant case and these latter attorney-client cases. In those cases, the attorney defendant was the sole person acting for the plaintiffs in the legal action wherein the alleged malpractice was committed. Here, by contrast, Old Security had more than one single representative on the transactions at issue here; if one defendant here was committing malpractice, then the Court may not presume, at this initial pleading stage, that other directors were not free to check that one defendant's actions. *Cf. League of United Latin American Citizens Council No. 4434 v. Clements,* 902 F.2d 293, 305–08 (5th Cir.) (distin-

---

**5.** Of course, if Old Security asserted timely claims against International Insurance in its capacity as insurer for any of these five defendants (or any of the other three other director defendants) and International Insurance's coverage defenses fails as to that defendant, then International Insurance will be solidarily liable with that defendant. In that case, that defendant's prescription defense would fail, but only to the extent of International Insurance's coverage. *Cf. Anderson,* 310 So.2d 128.

**6.** *See Braud v. New England Insurance Co.,* 576 So.2d 466, 468 (La.1991); *Montgomery,* 556 So.2d at 271; *Trujillo v. Boone,* 539 So.2d 894, 895 (La.App. 4th Cir.), *writ denied,* 541 So.2d 895 (La.1989); *Malone v. Wright,* 525 So.2d 13, 15 (La.App. 3d Cir.1988); *Newsom v. Boothe,* 524 So.2d 923, 926 (La.App. 2d Cir.), *writ denied,* 531 So.2d 479 (La.1988); *Edward J. Milligan, Jr., Ltd. v. LaCaze,* 509 So.2d 726, 729 (La.App. 3d Cir.), *writ denied,* 512 So.2d 440 (La.1987); *Olivier v. National Union Fire Insurance Co.,* 499 So.2d 1330, 1336–37 (La.App. 3d Cir.1986).

guishing between decision-makers who may act alone and those who act in a collegiate setting), *judgment adhered to on other grounds*, 914 F.2d 620 (5th Cir. 1990) (en banc), *reversed on other grounds sub nom. Houston Lawyers' Ass'n v. Attorney General of Texas*, — U.S. —, 111 S.Ct. 2376, 115 L.Ed.2d 379 (1991).

As the RTC reasonably infers, this check-and-balance may fail whenever a majority of the bank directors is among the persons jointly at fault; however, as the Court explained in Part II(A) above, the Court cannot presume at this time that the RTC will establish that a majority of the directors were at fault.

In sum, the Court must reject the RTC's position that prescription never begins to run against a corporate director or officer while that person still holds his corporate position, irrespective whether other corporate personnel may or may not be jointly at fault with that person. Under federal comity principles, it is for Louisiana state courts alone, and not this Court, to expand Louisiana's *contra non valentem* doctrine so as to impose the *per se* rule that the RTC seeks in this context. *See Thompson v. Johns–Manville Sales Corp.*, 714 F.2d 581, 583 (5th Cir.1983) ("departures [from earlier state law] are for the Louisiana courts, not for us"), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984).

### III.

As a last issue, the RTC seeks to strike all affirmative defenses of laches.

■■■ The RTC is wholly correct that this equitable doctrine may not be applied against a federal plaintiff once it obtains a cause of action. *See United States v. Core Laboratories, Inc.*, 759 F.2d 480, 483 (5th Cir.1985); *United States v. Arrow Transportation Co.*, 658 F.2d 392, 394–95 (5th Cir. Unit B), *reh'g en banc denied mem.*, 664 F.2d 291 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982); *see also FDIC v. Roldan Fonseca*, 795 F.2d 1102, 1109 (1st Cir. 1986). Nor does any defendant argue otherwise.

Revision Comment (b) to Civil Code article 3457 provides: "Under the Louisiana legal system, there is no room for the common law doctrine of laches." Citing this comment, the Louisiana Supreme Court has stated that "the equitable doctrine of laches ... has no application in such cases" when there is a "statutory provision for the time delays within which the petition must be filed." *Corbello v. Sutton*, 446 So.2d 301, 302 (La.1984). In that case, the Court determined that the legislature had provided such statutory deadlines and that the plaintiff had not met these deadlines; thus, the Court nonetheless upheld the dismissal of the plaintiff's claims.

One Louisiana appellate case decided after *Corbello* has nonetheless upheld a dismissal on the ground of laches. *See Osborne v. Stone*, 472 So.2d 223 (La.App. 1st Cir.), *vacated on other grounds*, 476 So.2d 809 (La.1985) (specifically not deciding whether "laches is available in Louisiana"). The case purported to recognize the doctrine in limited circumstances "when other factors, coupled with the passage of time, are present." *Id.* at 225. That court stated that "laches is not applicable to bar a suit *solely on the basis of the passage of time* where the statutory law [which includes the Civil Code] has established a prescriptive period." *Id.* at 225 (emphasis in original). But there was no suggestion of what prescriptive period, if any, applied to the plaintiff's claims. The sole cases that case cites where a dismissal was upheld or directed on the basis of laches—all decided before *Corbello*—concerned claims against a public entity.

Even if this Court were free to ignore the strongly-worded, broadly-stated observation of the Louisiana Supreme Court and assume that it would apply the doctrine in the circumstances present in *Osborne, cf. Green v. Walker*, 910 F.2d 291, 294 (5th Cir.1990) (a federal court may not blindly follow intermediate state appellate court decisions on state law, where there is "persuasive data that the highest court of the state would decide otherwise"), the instant case does not present similar circumstances for applying the doctrine of laches. First,

all of Old Security's claims were governed by one or more codal prescriptive periods: namely, the one-year period under Civil Code article 3492 and, perhaps, the ten-year period under Civil Code article 3499. *Cf. Maurello v. Department of Health and Human Resources*, 546 So.2d 545, 549 (La. App. 1st Cir.1989) (concurring opinion) (suggesting that *Osborne* held that laches may apply "where there is no express prescriptive period"); *Great American Insurance Co. v. Swift & Co.*, 587 F.Supp. 432, 434 (M.D.La.1984) (same, but not applying the doctrine because the plaintiff's claim was governed by a one-year prescriptive period). Second, none of the defendants here is a public entity and assertion of claims against any of these defendants will not upset the State's fiscal policy. *Contrast Osborne*, 472 So.2d at 227. Third, there is no suggestion by any individual defendant that he changed "his position" in justifiable, but detrimental reliance on Old Security's not suing him earlier. *Cf. Commercial National Bank in Shreveport v. Keene*, 561 So.2d 813, 816 (La.App. 2d Cir. 1990). Finally, to recognize the possibility of laches in this case would irreconcilably conflict with Louisiana's well-established *contra non valentem* doctrine.

### IV.

For these reasons, the Court strikes all defenses of laches, but does not strike any defendant's defenses of prescription.