IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20271
_____

ROSAURA E. ROMERO-BALDAZO,

Plaintiff-Appellant,

versus

PAN-AMERICAN ASSURANCE COMPANY;
GONZALO TREVION,

Defendants-Appellees.

* * * * * * * *

_____

No. 98-20731
_____

ROSAURA E. ROMERO-BALDAZO,

Plaintiff-Appellant,

versus

PAN-AMERICAN ASSURANCE COMPANY,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Texas
(H-96-CV-185)
_____

October 8, 1999

Before REAVLEY, HIGGINBOTHAM and DENNIS, Circuit Judges.

REAVLEY, Circuit Judge:[*]

Appellant Rosaura Romero-Baldazo (Baldazo) raises three arguments in this appeal. As to her third argument, we agree that she was assessed excessive costs. Otherwise we affirm.

A.      Exclusion of Evidence

Baldazo complains that the district court erred in excluding two exhibits. We review a trial court's evidentiary rulings only for abuse of discretion. See Johnson v. Ford Motor Co., 988 F.2d 573, 578 (5th Cir. 1993). One excluded exhibit was a report of a preliminary criminal inquest by a Mexican prosecutor with the office of the attorney general of the State of San Luis Potosi, who investigated the crash scene in Mexico and whether the body found at the scene was that of Baldazo's brother, the insured. The second was an order of the state attorney general affirming the no probable cause ruling made at the preliminary inquest.

The exhibits contain the conclusion of the government prosecutor that the body recovered from the crash scene was that of the insured, as well as personal observations of other government officials, and they are filled with hearsay statements of various private individuals who were witnesses to relevant events. Federal Rule of Evidence 803(8) applies to observations or findings of a government official, not to hearsay statements made by private actors which are contained in the report. See FDIC v. Mmahat, 907 F.2d 546, 551 & n.6. The rationale for the hearsay exception is the assumption that public officials perform their duties properly and without a motive other than to submit accurate and fair reports. See Moss v. Ole South Real Estate, Inc., 933

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

F.2d 1300, 1305 (5th Cir. 1991).

What is clear from Moss and Mmahat is that, at most, the findings and observations of the government officials contained in the exhibits were admissible. "Under [Fed. R. Evid.] 103(a), appellate courts should reverse on the basis of erroneous evidentiary rulings only if a party's substantial rights are affected. Moreover, the party asserting error based on erroneous rulings bears the burden of proving that the error was harmful." Carroll v. Morgan, 17 F.3d 787, 790 (5th Cir. 1994) (citation omitted). Baldazo has not shown any harm due to the exclusion of the exhibits, because the jury was informed of the findings of the Mexican authorities, and the key evidence presented to those authorities was essentially replicated at the trial.

The jury was told of the findings of the inquest in Mexico. During voir dire Baldazo's counsel explained to the jury:

> The accident was investigated by the Mexican authorities, and there were many investigations for different reasons by the Mexican authorities. It was investigated over a period of several years, and the conclusions of each of those investigations and the final death certificate was that my client's brother, David Carlos Romero-Baldazo, died in this accident.

During opening statement, counsel again explained to the jury that an investigation had been conducted by the state attorney general's office in Mexico, and that at the conclusion of this and other investigations in Mexico, a final death certificate was issued identifying the body found at the accident scene as that of David Romero-Baldazo. During closing argument, counsel reminded the jury of the investigation in Mexico and its finding that the insured had died in the vehicular accident.

The jury also heard from the key fact and expert witnesses who submitted statements or reports to the inquest in Mexico, including (1) Jose Luis Romero-Baldazo, the insured's brother, who according to the inquest report had gone to the crash scene and

3

identified the body as that of his brother, (2) Miguel Zavala, who traveled with the insured in another vehicle on the date he allegedly died in the crash, and reported the crash to the highway patrol, (3) Dr. Javier Reyes, a medical examiner who examined the body, (4) Dr. Jose Luis del Hierro, a former medical examiner and expert on forensic medicine, who, at the behest of two Mexican insurance companies that had also issued policies to the insured, had prepared a report concluding that the body found at the crash site was not that of the insured, and (5) Juan Manuel Vega Rodriguez, an expert in identification with the office of the attorney general of Mexico, who had accepted an appointment by the inquest office to compare photographs of the insured and the body. In particular, the inquest officer found the opinion of the appointed expert, Rodriguez, "of the utmost importance," and found that it "deserves more credibility" than the opinion of Dr. del Hierro. The jurors heard from these experts and were entitled to make their own credibility determinations. The exclusion of the exhibits did not affect Baldazo's substantial rights.

B.      Denial of Motion to Remand

Baldazo complains that the district court erred in denying her motion to remand the suit she had brought in state court. Pan-American sued Baldazo in federal court, seeking a declaratory judgment that Baldazo was not entitled to the proceeds of the insurance policies sold to her brother. Baldazo later sued Pan-American and a non-diverse insurance agency, Rudy Espinoza & Associates, Inc. (Espinoza), in state court. Baldazo claimed that an Espinoza agent, Gonzalo Trevion, had made certain misrepresentations to the insured, Baldazo's brother, in the course of selling him the Pan-American policies. Pan-American removed the case to federal court, claiming that Espinoza had been fraudulently joined to defeat diversity jurisdiction. Baldazo filed a

4

motion to remand the removed action to state court.

To establish that a non-diverse defendant has been fraudulently joined to defeat diversity jurisdiction, the removing party must prove that there has been outright fraud in the plaintiff's pleading of the jurisdictional facts, or that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court. See Cavallini v. State Farm Mutual Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995).

While we have cautioned against "pretrying a case to determine removal jurisdiction," fraudulent joinder claims can be resolved by "piercing the pleadings" and considering summary judgment-type evidence such as affidavits and deposition testimony. See Carriere v. Sears, Roebuck and Co., 893 F.2d 98, 100 (5th Cir. 1990). Employing this procedure, Pan-American offered evidence that Trevion, the individual who allegedly made the misrepresentations, was not an agent for named defendant Espinoza. The district court denied the motion to remand and dismissed the claims against Espinoza, agreeing with Pan-American that the evidence indicated that Trevion was an independent insurance agent, rather than an agent of Espinoza.

Baldazo moved for reconsideration, offering documents obtained in discovery which she claimed showed that Trevion was indeed an agent of Espinoza. The district court denied the motion for reconsideration, reasoning that there was no possibility of a recovery against Espinoza even if Trevion was Espinoza's agent, since "[t]here is no possibility of recovery under the DTPA where the plaintiff fails to allege that she acted on the alleged misrepresentations or that the alleged misrepresentations were a producing cause of her damages."

We agree with the district court that Baldazo did not offer evidence of causation.

5

She asserted claims against Espinoza under the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex. Bus. & Com. Code §§ 17.41-17.63, and Article 21.21of the Texas Insurance Code. Both statutes require the plaintiff to prove that the prohibited conduct of the defendant was a producing cause of her damages. See Provident American Ins. Co. v. Castaneda, 988 S.W.2d 189, 193 (Tex. 1998) (Art. 21.21); Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995) (DTPA). "A producing cause is a substantial factor which brings about the injury and without which the injury would not have occurred." Id. at 481. While the affidavits Baldazo filed in support of the motion to remand claim that Trevion made certain misrepresentations and failed to disclose certain matters, they offered no proof that Baldazo or her brother, the insured, took actions on the basis of the alleged misrepresentations and nondisclosures.

Furthermore, the court had original subject matter jurisdiction over the declaratory judgment action, and upon that jurisdiction the court was authorized the try the case that was presented to the jury, and enter judgment on the jury verdict. The jury found that the body recovered at the crash site in Mexico was not that of the insured, David Romero-Baldazo. This finding, the basis of the district court's final take-nothing judgment, necessarily means that a remand to state court of Baldazo's state court action would be a meaningless exercise.

The Texas court would rule that the claims are barred by res judicata or collateral estoppel. The state law claims asserted in the state court suit were all premised on Pan-American's failure to pay insurance benefits after David Romero-Baldazo allegedly died in the 1994 vehicular accident in Mexico. Whether we characterize the issue as moot, or the district court's error, if any, as harmless, we can see no basis for directing a remand to state court, since the state court would necessarily conclude that the federal judgment

6

precludes any relief for Baldazo.  Cf. McClelland v. Gronwaldt, 155 F.3d 507, 514 (5th Cir. 1998) ("[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.") (quoting Pacific. Ins. Co. v. General Dev. Corp., 28 F.3d 1093, 1096 (11th Cir. 1994)); Sullivan Cent. Plaza I, Ltd., v. BancBoston Real Estate Capital Corp. (In re Sullivan Cent. Plaza, I, Ltd.), 914 F.2d 731, 733-34 (5th Cir.1990) ("The mootness  doctrine is grounded primarily and originally in the appellate court's inability to fashion relief.");  NLRB v. O.E. Szekely & Assocs., Inc., 259 F.2d 652, 654 (5th Cir. 1958) ("if, pending an appeal an event occurs which renders it impossible for [an] appellate court to grant any relief or renders a decision unnecessary, the appeal will be dismissed as moot.").

C.      Award of Costs

Baldazo complains that the district court, in awarding of costs of $98,866.42, improperly included attorney's fees, mediation fees, and expert witness fees.  Pan-American concedes that in Utica Lloyd's of Texas v. Mitchell, 138 F.3d 208, 210 (5th Cir. 1998), we held that the Texas Declaratory Judgment Act's provision for attorney's fees, Tex. Civ. Prac. & Rem. Code § 37.009, does not provide a basis for an award of attorney's fees in a federal declaratory judgment action.  Expert fees likewise are not recoverable as costs, Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir. 1993), and the relevant federal costs statutes, 28 U.S.C. § 1821, 1920, make no provision for mediation fees.  We agree with Pan-American that after these fees are deducted, the remaining costs of $11,068.84 are allowed.

We accordingly modify the judgment below to award costs of $11,068.84.

AFFIRMED as MODIFIED.