## The SPORTS FACTORY, INC.

v.

## William CHANOFF and Daniel A. Greenberg.

### Civ. A. No. 82–5784.

United States District Court, E.D. Pennsylvania.

April 2, 1984.

Carl N. Martin and Tom P. Monteverde, Philadelphia, Pa., for plaintiff.

David H. Marion and Wayne M. Thomas, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

In this action plaintiff, The Sports Factory, Inc., seeks to recover treble damages from the defendants, William Chanoff and Daniel Greenberg, for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68

("RICO"), federal securities law, and Pennsylvania common law. Presently before the court is plaintiff's motion for summary judgment, and defendants' cross-motion to dismiss or for summary judgment. For the reasons set forth below, defendants' motion will be granted in part and plaintiff's motion will be denied.

FACTS

Plaintiff, The Sports Factory, Inc., operates a health and racquetball club which sells memberships to the general public. Pursuant to a lease executed in April of 1980, between plaintiff and a limited partnership known as Ridley Park Associates ("Ridley Park"), plaintiff is a tenant of the Woodlyn Shopping Center, a commercial property owned by Ridley Park. Defendant William Chanoff is a general partner of Ridley Park, as well as its managing partner. The only other general partner to the limited partnership is Chanoff's wife. Defendant Daniel Greenberg is Chanoff's personal business manager and is purportedly not an employee of Ridley Park.

Plaintiff's claims against Chanoff and Greenberg stem from events related to plaintiff's lease agreement with Ridley Park. Plaintiff alleges that defendants engaged in the following course of conduct beginning in early 1980, when plaintiff contacted an agent of Ridley Park concerning the availability of lease premises in Woodlyn Shopping Center. Plaintiff asserts that at that time it was told that: 1) with one small exception all of the space in the Shopping Center was under lease to other tenants; 2) all the stores in the Shopping Center would be open by mid-March 1980; and 3) the zoning of the available space in the Shopping Center was proper for the operation of plaintiff's health spa. Relying on these representations, plaintiff signed a lease in February 1980, and sent it to Chanoff for approval. Thereafter, having been told by Chanoff's employees that the lease had been accepted and executed, plaintiff incurred substantial expenses on initial improvement of the lease premises.

The first concrete sign of trouble appeared in April of 1980, when municipal authorities ordered plaintiff to stop further construction of improvements to the leased premises because the Shopping Center was not properly zoned for the operation of a health club. Plaintiff phoned Ridley Park's manager, Bruce Hoffman, and asked when the Sports Factory would receive an executed copy of the lease it had signed in February. Hoffman informed plaintiff that Ridley Park wanted to make a few changes in the lease before returning it. Because of its desire to make these changes, the February lease signed by plaintiff was in fact never executed by Ridley Park and on April 21, 1980, Ridley Park and plaintiff both entered into a "new" lease, which was actually the first lease. This lease, as amended on June 23, 1980, provided that Ridley Park would build plaintiff a two story structure capable of housing 13 regulation size racquetball courts. Under the terms of the lease the first story was to be completed by September 15, 1980, and the second story by October 15, 1980.

Sometime in August, 1980, defendant Chanoff decided that two one story racquetball buildings would be preferable to one two story building, and he directed his architect to prepare appropriate plans. Plaintiff claims it was never advised of the change prior to September 15, 1980, and was instead assured that construction of the racquetball building would be partially completed, as scheduled, on that date. Relying on this representation plaintiff continued and completed construction of its improvements on the existing leased premises, and advertised for membership sales by promoting that its grand opening would take place on September 15, 1980. Despite defendant's alleged representations, however, construction of the racquetball building did not even begin until late October, 1980. Plaintiff claims that as a result of the delay it was forced to both cancel membership contracts and refund the cash realized from those contracts, money which it had intended to use to install racquetball courts in the racquetball building.

On October 14, 1980, plaintiff met with Chanoff to discuss the situation. Chanoff indicated that he had no intention of curing Ridley Park's breaches of the lease unless plaintiff agreed to additional amendments to the lease, including changes in the completion date of the racquetball building, increased rent, and a release as to all of plaintiff's claims against Ridley Park arising from the existing breaches of the lease. At about the same time Chanoff agreed to loan plaintiff $101,000.00 to purchase the racquetball courts. However, to obtain this loan, plaintiff was required to execute three promissory notes at interest rates above prime, as well as an agreement to pay Chanoff 5% of plaintiff's net profit. When plaintiff agreed in principle to accede to Chanoff's demands on the lease amendments, construction of the racquetball building was initiated.

Plaintiff asserts that it was only during the actual construction of the building itself that it learned that Ridley Park was building just a one story racquetball facility capable of holding only 6 courts. When plaintiff questioned this, Chanoff and Greenberg represented that in order to satisfy the obligation to provide space for 13 courts, Ridley Park would let plaintiff additional space contiguous to plaintiff's existing premises and would build a structure on that space which could hold 7 standard racquetball courts. Allegedly due to financial pressures plaintiff agreed to a second amendment to the lease on June 9, 1981, which embodied this change. At or about the same time, plaintiff also executed a promissory note and an agreement to pay Chanoff 5% of its profits.

Plaintiff claims that in alleged contravention of the 1981 amendment, construction of the second racquetball building has been hindered, apparently up to the present day, since plaintiff requires a portion of the architectural plans of the neighboring tenant in order to complete its own plans, and defendant has refused to provide plaintiff with the necessary portion of the neighboring business's plans. Plaintiff asserts that despite their representations in 1981, Cha-noff and Greenberg never intended to build the second building.

Plaintiff's final allegations concern the fire sprinkler system protecting its leased area, and the heating, ventilation and air conditioning equipment supplied by Ridley Park to service plaintiff's premises. Plaintiff claims that contrary to Greenberg's promises and assurances during the winter of 1981–1982 that the sprinkler system was in proper working order and would be operable at all times, Greenberg knew that the system was then frozen and not operating. Plaintiff also claims that Ridley Park's air conditioning expert reported to Greenberg that the heating, ventilation and air conditioning equipment installed by Ridley Park in plaintiff's pool area was inadequate to serve that area, but that Greenberg nonetheless disclaimed that the problem was Ridley Park's responsibility.

The above paragraphs summarize plaintiff's version of the underlying facts of this dispute. Defendants, not surprisingly, contest almost all aspects of plaintiff's factual presentation and this would seem to preclude further consideration of plaintiff's motion for summary judgment. The present circumstances, however, are somewhat novel and plaintiff argues that these circumstances entitle it to summary judgment despite what appears at first glance to be the existence of genuine issues of material fact.

Plaintiff directs the court's attention to the following uncontested facts. On March 30, 1982, pursuant to the arbitration clause in the April, 1980 lease, plaintiff filed a demand for arbitration against Ridley Park. The demand asserted claims for breach of the lease and fraudulent inducement to enter into amendments to the lease. Plaintiff sought temporary rent abatement, money damages for work performed on the leased premises at plaintiff's expense as a result of defendants' negligent construction, money damages for membership contract cancellations and resulting costs including profits, recission of the second amendment to the lease dated June 9, 1981, recission of plaintiff's profit

agreement with Chanoff, and injunctive relief requiring Ridley Park to construct additional facilities.[1]

On September 23, 1983, the arbitrators entered an award in plaintiff's favor, finding that Ridley Park committed both fraud and intentional and willful breach of the lease. The arbitrators ordered recission of the second amendment to the lease dated June 9, 1981, $584,730.00 compensatory and $200,000.00 punitive damages in favor of plaintiff and against Ridley Park, an immediate rent set-off, rent credit for electrical and air conditioning repairs undertaken by plaintiff, and damages in the form of a set-off for any amounts payable to William Chanoff under the June 1981 profit agreement. The arbitrators made no specific factual findings despite both plaintiff's and Ridley Park's submission of detailed proposed findings.

In view of the arbitration award against Ridley Park, plaintiff filed the present motion for summary judgment on its claim against defendant Chanoff for violation of the federal securities law, specifically 15 U.S.C. §§ 77q and 78j, and 17 C.F.R. § 240.10b–5, and on 3 of the 4 counts in its complaint for RICO violations as proscribed by 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d). Plaintiff argues that the facts essential to establishing defendant Chanoff's liability under RICO and the securities laws have already been established in the arbitration proceeding against Ridley Park for breach of lease and fraudulent inducement to amend the lease. Plaintiff claims that as a general and managing partner of Ridley Park, Chanoff had the right to and did in fact control the litigation before the arbitrators. Plaintiff asserts that Chanoff should be viewed as a privy of Ridley Park who is collaterally estopped

from relitigating the issues resolved in that arbitration. Accordingly plaintiff seeks summary judgment on its securities and RICO claims against Chanoff here.

While plaintiff asserts collateral estoppel as a sword, defendants simultaneously raise res judicata as a shield. Defendants' cross-motion seeks the entry of summary judgment in their favor on the grounds that res judicata prevents plaintiff from bringing multiple actions against the same parties or their privies based on the same incident. Defendants argue that plaintiff obtained all the relief it requested in the arbitration against Ridley Park, and that plaintiff is barred from pursuing this federal suit insofar as it is based on claims which could have been raised in that arbitration.

## DISCUSSION

### Plaintiff's Summary Judgment Motion—Collateral Estoppel

 Even upon its initial review of plaintiff's collateral estoppel argument the court noted a glaring problem with plaintiff's approach. It is of course well known that collateral estoppel prevents relitigation of specific issues which were both actually litigated and necessarily decided in the first action. *Safeguard Mutual Ins. v. Williams*, 463 Pa. 567, 345 A.2d 664 (1975). Here, however, the arbitrators never made or adopted any findings of fact, and this court may not, as plaintiff would have it do, infer the factual basis for the arbitrator's decision and then use those inferences to award plaintiff summary judgment under the rubric of collateral estoppel. This conclusion is obvious and requires no further discussion. Plaintiff's motion for summary judgment must accordingly be denied.

---

**1.** It was while the arbitration against Ridley Park was proceeding that plaintiff brought the present federal suit against William Chanoff, Ridley Park's general and managing partner, and Daniel Greenberg, Chanoff's personal business manager, for violation of RICO, the federal securities laws, and Pennsylvania law relating to common law conspiracy and tortious interference with contracts. As previously mentioned, plaintiff seeks to: 1) recover treble damages under RICO against these parties for their conduct as it relates to and arises out of the lease agreement between plaintiff and Ridley Park; 2) obtain recission of the profit sharing agreement with Chanoff dated June 9, 1981; and 3) obtain injunctive relief preventing defendants from further interference with plaintiff's business and requiring Ridley Park to construct additional facilities.

*Defendants' Summary Judgment Motion—Res Judicata*

At a hearing held on February 24, 1984, on the parties' respective summary judgment motions, counsel for plaintiff appropriately conceded that the principles of res judicata bar plaintiff from bringing the present action insofar as it raises claims which either could have been or actually were litigated before the arbitrators. Plaintiff asserts however that its RICO and securities claims do not fall into this category. The court cannot agree with plaintiff's view.

The Supreme Court has recently been confronted with numerous occasions to repeat the well known principles of res judicata. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

> It is undoubtedly a settled principle that a party seeking to enforce a claim, legal or equitable, must present to the court, either by the pleadings or proofs, or both, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible.

*Stark v. Starr,* 94 U.S. 477, 485, 24 L.Ed. 276 (1877).

Whether res judicata is applicable to the present situation requires two determinations. First, whether the cause of action plaintiff now seeks to assert is the same cause of action that it asserted in the arbitration. Second, whether the parties in this suit are identical to or in privity with the parties in the arbitration.

Guidance as to what constitutes the same cause of action may be gleaned from *Nevada v. United States,* — U.S. —, —, 103 S.Ct. 2906, 2918–19, 77 L.Ed.2d 509 (1983). In that case the Supreme Court noted that there are several tests which might be used to identify the existence of just one cause. For instance, causes of action are to be deemed the same "if the evidence needed to sustain the second action would have sustained the first action." *Nevada v. United States,* — U.S. at — n. 12, 103 S.Ct. at 2918–19 n. 12 (citing Restatement of Judgments § 61 (1942)). Taking a more pragmatic approach, causes of action are also the same if they arise from the same transaction. "[W]hether they are products of the same 'transaction' is to be determined by 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Nevada v. United States,* — U.S. at — n. 12, 103 S.Ct. at 2919 n. 12 (citing Restatement (Second) of Judgments § 24 (1982)).

Applying either of these tests to the case at hand requires the same conclusion. The cause of action plaintiff asserted in the arbitration is the same cause of action it now seeks to assert here. That the core facts in the two proceedings are identical has indeed been conceded by plaintiff's counsel both at oral argument, and implicitly by way of plaintiff's motion for summary judgment. Additionally, that the two proceedings are products of the same transaction is shown by their identical origin from the lease agreement between plaintiff and Ridley Park, their identical time coverage of the years 1980 to the present, their identical reliance on the same core facts, and counsel's representation that the same exhibits offered to prove plaintiff's case in the arbitration will be offered in support of its claims here. In

short, there is no doubt that the present suit, although embodying different claims, is the same "cause of action" as was litigated in arbitration.

■ Turning to the question of the identity of the parties, the crux of the matter is whether defendant William Chanoff, Ridley Park's general partner, can raise the defense of res judicata against plaintiff given defendant's status as a general partner of Ridley Park. Chanoff argues that res judicata should be available to him on the ground that plaintiff has already had a fair opportunity to litigate its claims against him in the arbitration proceeding and against Ridley Park even though technically he was not a named party to that proceeding. After careful consideration of the Pennsylvania laws of limited partnerships in light of the principles underlying the doctrine of res judicata, the court concludes that the suit against William Chanoff is barred by the arbitration.

■ Pennsylvania law clearly provides that a general partner in a limited partnership is personally liable for all obligations of the limited partnership. 59 Pa.C.S.A. §§ 523 & 327 (Purdon Supp.1984). Thus under Pennsylvania law, William Chanoff is individually liable for the debts and obligations of Ridley Park, including that arising from the arbitration award. The existence of this "alter ego" relationship between Chanoff and Ridley Park extends the bar of res judicata to preclude plaintiff's attempt to split his cause of action and sue Chanoff here. *See Ritchie v. Landau,* 475 F.2d 151 (2d Cir.1973). It is significant that a review of the arbitration award shows that this court cannot award plaintiff anything it has not already received through the arbitration except treble damages under RICO, and there was nothing to prevent plaintiff from requesting such damages from the arbitrators. Plaintiff should not, and hence will not, be allowed to litigate the issues relating to its lease difficulties over the years 1980 to 1983 a second time.

Plaintiff cites Pa.R.Civ.P. 2134(a) for the proposition that a judgment entered against a partnership does not bar a subsequent action against a partner who was not individually named as a defendant. But as defendant points out, this rule of procedure does not alter the substantive law of either partnerships or res judicata. The purpose of Rule 2134(a) is to allow a plaintiff who has obtained a judgment against a partnership sued in its firm name only, to recover against individual partners who were not individually named as defendants to the suit against the firm, to the extent that the judgment against the firm is unsatisfied. Rule 2134(a) thus does not allow plaintiff to avoid the effect of the application of res judicata to its claims against defendant Chanoff.

■ In defendants' cross-motion for summary judgment, defendant Greenberg argues that res judicata should also bar plaintiff's suit against him. The court cannot agree. Plaintiff's claims against Greenberg stand on different ground than those against Chanoff. First and foremost, Greenberg is not a general partner and purportedly is not even an employee of Ridley Park. Unlike the situation involving Chanoff, there is no basis upon which Greenberg could be viewed as so closely connected with Ridley Park that a suit against Ridley Park would be tantamount to a suit against Greenberg himself. The liabilities of Ridley Park do not encumber Greenberg in any way. The court sees no merit to Greenberg's argument that since he is Chanoff's agent, the principles of res judicata bar this suit against him under the theory that once a plaintiff has recovered from the principal, he should be precluded from suing the agent. Of course to the extent that any recovery against Greenberg would duplicate that which plaintiff has already received, Greenberg would be entitled to a set-off. But this does not prevent plaintiff from recovering such other damages from Greenberg as the facts warrant. Accordingly, defendants' cross-motion for summary judgment will be denied as to defendant Greenberg.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment will be denied, and defendants' cross-motion for summary judgment will be granted as to claims against William Chanoff only.

An appropriate Order will be entered.