United States Court of Appeals,

Fifth Circuit.

Nos. 90–3123, 90–3130.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the FSLIC Resolution Fund substituted for Federal Savings & Loan Insurance Corporation, Plaintiff–Appellant,

v.

JOHN A. MMAHAT, ET AL., Defendants–Appellees.

FEDERAL DEPOSIT INSURANCE CORPORATION, as Manager of the Federal Savings & Loan Insurance Corporation Resolution Fund, Plaintiff–Appellant,

v.

PETER E. DUFFY and NEW ENGLAND INSURANCE COMPANY, Defendants–Appellees.

May 20, 1992.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before KING, DAVIS and JOHNSON, Circuit Judges.

KING, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC) appeals the dismissal with prejudice of its suit against Peter E. Duffy, a former partner in the law firm of Mmahat & Duffy, and New England Insurance Company, Duffy's malpractice insurance carrier (*Duffy* ). It also appeals from part of the district court's denial of the Federal Savings & Loan Insurance Corporation's (FSLIC's) motion to enforce the oral settlement agreement entered into in its suit against Duffy's former partner, John Mmahat, and Mmahat & Duffy (*Mmahat* ). The district court concluded that the terms of the *Mmahat* settlement agreement, and the pretrial order in that suit, barred the subsequent action against Duffy. Finding that the district court erred both in its interpretation of the *Mmahat* settlement agreement and the legal effect of the *Mmahat* pretrial order on the *Duffy* suit, we reverse the *Mmahat* judgment in part, vacate the dismissal of *Duffy,* and remand *Duffy* for trial.

I. BACKGROUND

The *Mmahat* and *Duffy* suits both arise from Mmahat's activities as general counsel of the

now-defunct Gulf Federal Savings Bank (Gulf Federal) performed during the tenure of his partnership at the law firm of Mmahat & Duffy (M & D). After Gulf Federal was placed in receivership in 1986, the FSLIC, as receiver, brought various claims against Gulf Federal's former management and others, including an action against Mmahat and M & D. The FSLIC did not name Duffy as a defendant in any of these claims.

In an effort to simplify the trial, the *Mmahat* case was divided into two parts. Phase I included the suit against M & D and Mmahat individually, and New England Insurance Company (New England), their professional liability insurer,[1] for legal malpractice and breach of fiduciary duty. The professional malpractice action rested on the claim that Mmahat had repeatedly advised Gulf Federal to make loans in violation of the "loans-to-one-borrower" restrictions of the Federal Home Loan Bank Board.[2] Phase II consisted of malpractice claims relating to three loan transactions in which Mmahat made defective title examinations and other errors. The Phase I case culminated in a jury verdict for $35 million against Mmahat and M & D.

After the verdict was returned, but before the district court determined whether the partnership's insurance policy covered the verdict, counsel announced a settlement on the *Mmahat* Phase II claims. Counsel for the FSLIC dictated the terms of the settlement into the record. The settlement covered the Phase II claims for malpractice. The parties also reserved their rights and defenses in connection with the jury verdict and any judgments rendered in the Phase I claim. New England specifically reserved its right to contest both coverage and policy limitations on both phases of the lawsuit and how payments of the Phase II settlement would be credited against the policy limitations. The FSLIC reserved the right to oppose. When these terms were recorded, the district

---

[1]Suit against New England was brought pursuant to the Louisiana direct action statute, La.Rev.Stat.Ann. § 22:655. This provision gives the plaintiff the right to pursue a cause of action against the wrongdoer directly against the wrongdoer's insurer. *See Trahan v. Liberty Mutual Ins. Co.,* 314 So.2d 350, 354 & n. 6 (La.1975).

[2]For a more detailed discussion of this cause of action, see *FDIC v. Mmahat,* 907 F.2d 546, 549 (5th Cir.1990), *cert. denied,* ––– U.S. ––––, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1986).

court asked all attorneys present whether they had their client's authority to enter into the settlement. They responded that they did. The district court then asked if the settlement affected anyone else. Michael Ellis, co-counsel for Mmahat and M & D, announced that Duffy concurred.

In response to the district court's request, the parties listed the following issues as requiring resolution to conclude the case: (1) whether Mmahat and New England had any claim against American Casualty Insurance Company; (2) whether the policy exclusions of New England precluded it from liability for payment of the Phase I judgment; (3) whether Mmahat was entitled to discharge in bankruptcy; and (4) the apportionment of damages between the officers and directors of Gulf Federal and Mmahat and M & D.

After the parties reached this settlement on the Phase II claims, the district court ruled that the New England policy did not cover any of the judgment against Mmahat and M & D because it excluded coverage for "dishonesty." The FSLIC appealed this ruling.[3] While the appeal was pending, the parties tried unsuccessfully to reduce their settlement to writing. On November 3, 1988, the FSLIC filed a motion to enforce the *Mmahat* oral settlement agreement. On November 14, 1988, the FSLIC filed suit against Duffy and New England, contending that Duffy, as a 40% partner in M & D at all relevant times, was liable under Louisiana law for his virile share of the $35 million judgment against the partnership rendered in Phase I.[4] In opposition, New England argued that because the FSLIC failed to reserve its claims against Duffy or New England as his insurer, the FSLIC had settled and released those claims under the agreement. The district court agreed. It denied the FSLIC's motion and sua sponte dismissed the *Duffy* complaint with prejudice. Specifically, the district court based its decision on the following grounds: (1) the FSLIC failed to include

---

[3]Mmahat and M & D also appealed the jury's liability verdict. On appeal, we sustained the jury verdict and affirmed the district court's ruling on the coverage issue. *FDIC v. Mmahat,* 907 F.2d 546 (5th Cir.1990), *cert. denied,* ── U.S. ──, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991).

[4]Because Duffy was in bankruptcy, the suit also alleged that New England, as Duffy's insurer, was responsible for his liability up to the $2 million policy limit.

potential claims against Duffy in the *Mmahat* pretrial order;  (2) the settlement of Phase II in *Mmahat* implicitly included relinquishment of all malpractice claims remaining after litigation of Phase I, including any against Duffy;  (3) the reservation of rights announced during the settlement served only to preserve both parties' appeal rights from the jury verdict in Phase I;  (4) neither party mentioned any claim against Duffy when the district court requested a listing of unresolved claims;  and (5) since the FSLIC was the party who dictated the terms of the settlement offer into the record, any ambiguity, if it exists, should be construed against the FSLIC.  The FDIC[5] appealed both rulings.  We granted the FDIC's motion to consolidate these appeals.  The FDIC contends that the district court erred in (1) concluding that the FDIC waived its claim against Duffy and New England by failing to include the issue in the *Mmahat* pleadings or pretrial agreement;  and (2) interpreting the scope of the December 14, 1988 *Mmahat* settlement agreement.  We address these issues in turn.

## II. ANALYSIS

The parties disagree as to the appropriate standard to review oral settlement agreements. New England maintains that *Stipelcovich v. Sand Dollar Marine, Inc.,* 805 F.2d 599, 603 (5th Cir.1986), instructs us to review a court's interpretation of an oral settlement agreement under the clearly erroneous standard.  We do not believe *Stipelcovich* applies directly to the case at bar.  *See id.* (applying clearly erroneous standard to discern whether oral agreement entered into record and written settlement agreement constituted one agreement or two separate settlements).  Unlike *Stipelcovich,* the issue here involves the interpretation of settlement terms.  When the terms of the settlement are clearly specified in the record, as they are in this case, we find it appropriate to use the de novo standard we apply to review written contracts.  *See LTV Educ. Systems, Inc. v. Bell,* 862 F.2d 1168, 1172 (5th Cir.1989) ("where the parties' intentions can be ascertained from the

---

[5]As noted above, the FSLIC instituted proceedings in *Mmahat.*  Congress abolished the FSLIC effective August 9, 1989.  Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) § 401, Pub.L. No. 101–73, 103 Stat. 183, 354 (1989);  *see* 12 U.S.C. § 1437 note. Under FIRREA, FSLIC's assets, including the instant claims, were transferred to the FSLIC Resolution Fund.  The FDIC, as manager of this fund, is now the real party in interest pursuing this appeal.  *See* FIRREA § 215, 103 Stat. 252;  12 U.S.C. § 1821a.  In the remainder of our discussion, we will refer solely to the FDIC as the appellant in these consolidated actions.

unambiguous language of the instrument, construction of the release is a question of law for the court.") (citing *Weingart v. Allen & O'Hara,* 654 F.2d 1096, 1103 (5th Cir.1981)). *Compare In re Raymark Indus., Inc.,* 831 F.2d 550, 553 (5th Cir.1987) (applying clearly erroneous standard to determine terms of ambiguous oral settlement agreement because "[t]he court did not specify the terms of the settlement it was approving, nor did the parties seek such clarification at that time").

The FDIC contests the soundness of the district court's rationale in dismissing its claim against Duffy. The district court first reasoned that the FDIC was precluded from proceeding against Duffy individually because it did not name Duffy as a defendant or include a claim against Duffy in the *Mmahat* pretrial order. We agree with the FDIC that the district court erred in determining that the FDIC's failure to include Duffy as a party to *Mmahat* or mention him in the *Mmahat* pretrial order barred the suit against him.

Federal Rule of Civil Procedure 16 governs the scope and course of a trial. A court may properly reject an attempt to pursue an issue not contained in the pretrial order unless its consideration is necessary to prevent manifest injustice. *Trinity Carton Co. v. Falstaff Brewing Corp.,* 767 F.2d 184, 192 n. 13 (5th Cir.1985), *cert. denied,* 475 U.S. 1017, 106 S.Ct. 1202, 89 L.Ed.2d 315 (1986). However, this rule does not establish whether an individual must be joined as a *party* to an action.[6] We therefore consider whether the FDIC's failure to join Duffy as a defendant in the *Mmahat* suit prevented it from bringing the subsequent *Duffy* suit.

Neither federal nor Louisiana law requires the joinder of all partners in an action against a partnership. *See* 7 Charles A. Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1623 (2d ed. 1986) (joinder unnecessary for partners who are jointly and severally

---

[6]Federal Rule of Civil Procedure 19 specifies the criteria for determining who is a necessary or indispensable party to a suit. Although the district court did not expressly conclude that Duffy was an indispensable party to the *Mmahat* suit, its decision to dismiss the *Duffy* suit with prejudice suggests that joinder of Duffy was required for just adjudication, *i.e.,* so that his interests would not be adversely affected by the judgment. *See* Fed.R.Civ.P. 19.

liable); *Koppers Co. v. Mackie Roofing & Sheet Metal Works,* 544 So.2d 25, 26 (La.App.1989) (The purpose of La.Code Civ.P. art. 737 is not to "make it mandatory that the partners be named as defendants every time a partnership is sued";  rather, its purpose is to require a partnership creditor first to "exhaust his rights against the partnership before he proceeds against the individual partners.");[7]  *cf. Cone Mills Corp. v. Hurdle,* 369 F.Supp. 426, 438 (N.D.Miss.1974) (because general partners are jointly and severally liable for their partnership obligations under Mississippi law, one or more partners may be sued on a partnership obligation without joining all partners in the suit). *See generally Restatement (Second) of Judgments* § 60 (1982) (a successful lawsuit against one partner does not bar subsequent lawsuits against other partners individually on the same debt);  7 *Federal Practice and Procedure* § 1613, at 196 n. 32 (noting that Official Comment to the Uniform Partnership Act § 15 recognizes that under some state partnership laws, "the partnership may be sued in the partnership name, and thereafter the partners separately until satisfaction is had").  Under the Louisiana law of partnerships, each partner is secondarily liable for his virile share of the partnership debts.  *See* La.Civ.Code Art. 2817.[8]  The fact that Duffy might have been joined in *Mmahat* does not preclude the FDIC from enforcing the *Mmahat* judgment against Duffy in a separate action.  Since

---

[7]In *Koppers,* the plaintiff initially sued the partnership on a contract debt and obtained a judgment against the partnership.  A Louisiana court of appeals reversed the trial court's dismissal of a subsequent action seeking judgment against the individual partners for their virile shares.  The appellate court reasoned:

> [p]rior to filing the instant suit, Koppers had already obtained a judgment against the partnership.  Their present suit seeks redress against the individual partners for their virile share of the partnership debt.  Although, as a practical matter, it may have been more economical and expedient to have joined the partners in the first suit, the intent of the law has been satisfied that recovery was first sought against the primary debtor, the partnership.

*Koppers,* 544 So.2d at 26.

[8]This provision states:

> A partnership as principal obligor is primarily liable for its debts.  A partner is bound for his virile share of the debts of the partnership but may plead discussion of the partnership.

La.Civ.Code Art. 2817.  The number of members in a partnership, not the extent of each member's interest, defines the virile share.  *See Duncan v. Gill,* 227 So.2d 376, 382 (La.App.1969).

the *Mmahat* Phase I litigation resulted in a $35 million judgment against Mmahat and M & D, the FDIC is entitled to seek Duffy's share of the liability for that judgment.

New England also contends that the *Duffy* claim is barred because it arose from the same transaction as *Mmahat* and was brought against an individual in privity with the parties in *Mmahat.* Basically, New England contends that res judicata required that Duffy be joined as a defendant in *Mmahat* or that he not be sued at all. This contention is based on the application of the doctrine of claim preclusion, which "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim' or "cause of action.'" *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 535 (5th Cir.1978) (citations omitted). In *Kaspar,* we also observed that "[t]he aim of claim preclusion is ... to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach." *Id.*

*Duffy* does not rest on an identical obligation, nor does it require readjudication of the malpractice claim. *Mmahat* was based on the malpractice of Mmahat, committed as a partner of the firm. In contrast, *Duffy* is based on the pre-existing $35 million judgment against Mmahat and M & D and Duffy's virile share of liability for that debt pursuant to Louisiana Civil Code Article 2817. Thus, the FDIC did not pursue a new theory of recovery in *Duffy;* it sought merely to collect a pre-existing judgment in its favor.[9] Obviously, res judicata would bar *Duffy* if the FSLIC had lost in *Mmahat* because the FDIC would be seeking to relitigate the issue of liability. However, res judicata

---

[9]For this reason, *Sports Factory, Inc. v. Chanoff,* 586 F.Supp. 342 (E.D.Pa.1984), does not support New England's argument. *Sports Factory* did not involve an action to collect on a judgment. Rather, in *Sports Factory,* the district court held that Pa.R.Civ.P. 2134(a) did not permit the plaintiff to bring *new claims* against a partner who was not individually named as a defendant in a prior action against the partnership. The court noted that the purpose of the rule was "to allow a plaintiff who has obtained a judgment against a partnership sued in firm name only, to recover against individual partners who were not individually named as defendants to a suit against the firm, to the extent that the judgment against the firm is unsatisfied." *Id.* at 348. Consequently, *Sports Factory* harmonizes with the result we arrive at here.

does not bar the FDIC's suit against Duffy to collect the judgment it obtained against the firm.[10] *See Restatement (Second) of Judgments* § 60 (1982).

The FDIC also argues that the district court erroneously interpreted the oral settlement agreement as discharging the FDIC's claims against Duffy for his virile share of liability in the judgment against M & D. It also challenges the district court's finding that the agreement reserved the FDIC's rights for appeal purposes only. The FDIC maintains that the parties intended the *Mmahat* settlement to release Mmahat, M & D, and New England from liability only in connection with the three specific claims enumerated during the Phase II settlement conference, and reserve the FDIC's rights to enforce the Phase I jury verdict in its favor.

The district court found that the Phase II settlement agreement covered not only the specific claims listed by the parties, but "all matters involved in the case other than those specifically set forth in "Phase I.' " However, when he dictated the oral settlement agreement into the record, counsel for the FSLIC described the terms of the settlement as follows:

> The settlement of phase 2 of the litigation[, which] consists of FSLIC's claims against Mmahat & Duffy and New England for malpractice in connection with 1) title opinions issued by Mmahat & Duffy on the John Em's [sic] loan, 2) the special warranty deed prepared in connection with the sale of the Chateau Legrand project and 3) the lack of title examination on the Segura loan[,] consisting of the following terms in connection with that settlement: The FSLIC will settle and grant releases to John Mmahat, Mmahat & Duffy and New England *for the preceding claims* in return for payment of, total amount of $250,000, which is made up of $225,000 from New England and $25,000 from the third party defendant that [was] brought into the action by New England, that third party defendant being Continental Land Title Insurance Company.

(Emphasis added). This enumeration of the claims to be settled clearly confines the agreement to

---

[10]The fact that New England is the active party to the suit does not affect our analysis here. As Duffy's insurer, New England stands in Duffy's shoes. *Ex parte Tokio Marine & Fire Ins. Co.,* 322 F.2d 113, 116 (5th Cir.1963). An insurer may not rely on res judicata principles to avoid liability if the suit against the insured in whose shoes the insurer stands would not be barred by res judicata. Since res judicata does not bar the suit against Duffy, it does not bar the collection effort against New England as his insurer. New England is not an identical party in *Duffy* because the insurance policy provides separate coverage for Duffy as a partner of M & D.

those claims.[11]

The FDIC maintains that during the settlement conference, the FSLIC expressed no intention to release Duffy from any liability he might have for the *Mmahat* Phase I judgment.  The district court found that the agreement failed to preserve the FDIC's right to proceed against Duffy and New England as his insurer because,

> had FSLIC attempted to reserve any rights against these parties, neither counsel for Duffy nor counsel for New England, both of whom were present at this ... settlement, would have concurred in such a settlement.  Yet, both parties were specifically asked if they concurred in the agreement and both responded affirmatively.

The record lacks the factual basis for this reasoning.  No attorney appearing before the court during the settlement conference identified himself as representing Duffy.  The district court may have been misled when it inquired whether the settlement affected anyone else present.  An attorney who identified himself as representing Mmahat and M & D responded, "Mr. Duffy concurs."  However, the district court apparently misperceived the force of this statement.  First, counsel never identified himself as representing Duffy's individual interests, nor does the record show that Duffy himself was present at the settlement conference.  Second, the record contains no evidence that counsel for M & D or New England had the authority to settle any claims brought against Duffy individually.[12]

---

[11]The district court also looked to the attorney's listing of unresolved issues to find that the agreement included all remaining matters except those litigated in Phase I.  Because Duffy was not a party, a claim against him cannot properly be described as a remaining issue in the *Mmahat* suit.  The FSLIC would have had to explicitly waive any potential claim against Duffy during the settlement conference to have this effect.

[12]The New England insurance policy prevented both the insurer and the insured from settling without the written consent of the other.  The contract covering Mmahat & Duffy and its partners specifies that

> [t]he Insured may effect settlement of any claim ... with the written consent of the Company, such consent not to be unreasonably withheld.  The Insured shall not, except at personal cost, ... settle any such claim in the absence of such consent....

> The Company may, with the written consent of the Insured, make any settlement or compromise of any claim which it deems expedient....

Furthermore, counsel for the FSLIC further stated that "the FSLIC will reserve and maintain its rights under the jury verdict and any judgment to be rendered in its favor on phase I which consists, of course, of the claims for malpractice and breach of fiduciary duty in connection with the loan-to-one borrower violations." This general reservation of rights necessarily includes the right to enforce these judgments as well as the right to appeal from them.

In finding that the FSLIC released its right to pursue the claim against Duffy, the district court relied on the fact that the FSLIC failed to list collection of the Phase I judgment from Duffy as an unresolved issue during the settlement conference. As we observed above, because Duffy was not a party to the *Mmahat* litigation, the FDIC need not have mentioned a potential claim against him as an unresolved issue in *Mmahat*. In addition, the FDIC noted during the settlement conference that insurance policy coverage issues remained unresolved. Accordingly, we conclude that the district court erred in finding that the FDIC released all claims against Duffy in the *Mmahat* settlement agreement.[13] The FDIC's reservation preserved its right to file suit against Duffy and New England in an effort to collect Duffy's virile share of the $35 million judgment in *Mmahat*.

## III. CONCLUSION

For the foregoing reasons, we REVERSE that part of the district court's judgment in *Mmahat* which orders the FDIC to release any claims against Duffy and New England as his insurer and requires the FDIC to indemnify Duffy and New England as Duffy's insurer. Also, we VACATE the district court's dismissal with prejudice of *Duffy* and REMAND that case for further proceedings consistent with this opinion.

---

[13]The FDIC also requests reversal of the portion of the district court's judgment in *Mmahat* that orders the FSLIC to "defend, indemnify, and hold harmless John A. Mmahat, Mmahat & Duffy and New England as to all "Phase I' claims which FSLIC may have against these parties, including any and all claims against Peter Duffy and/or against New England as his insurer...." The transcript of the settlement agreement indicates that the FSLIC offered to indemnify only Continental Casualty Insurance Company from any claims against remaining defendants to the *Mmahat* litigation. Since the record lacks any indication that the FSLIC intended to indemnify other parties, we conclude that this order rests on a factually erroneous finding.