Martin BRODY and Florence Brody and MFB Partners, L.P.

v.

Mark HANKIN, Ind. and d/b/a Hankin Management Company and Hankin Management, Inc.

No. Civ.A. 03–CV–4739.

United States District Court, E.D. Pennsylvania.

Jan. 14, 2004.

Michael S. Bomstein, Pinnola & Bomstein, Philadelphia, PA, for Plaintiffs.

David L. Braverman, Matthew H. James, Michelle S. Walker, Braverman, Daniels, Kaskey, Ltd., Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Via the motion now pending before this Court, Defendants move to dismiss the plaintiff's complaint pursuant to Fed. R.Civ.P. 12(b)(6) and on the grounds that it is barred by the principles of *res judicata* and/or collateral estoppel. For the reasons outlined below, the motion shall be granted.

### Factual Background

This case arises out of three real estate partnerships in which the plaintiffs had purchased limited partnership interests in 1983. Those partnerships, Han Mar Associates XIV, XVIII and XXI, were formed by the defendant Mark Hankin, who was also the president, vice president and secretary of the general partner for each partnership, Industrial Real Estate Management, Inc. ("IREM") and the co-owner of the rental properties which were the subject of the real estate partnerships. (Complaint, ¶s 6,7). In addition, pursuant to a management and leasing agreement between Mr. Hankin and the HanMar Partnerships, Mr. Hankin oversaw the management and leasing of the subject real estate. (Complaint, ¶ 18).

Under the terms of the offering memorandum and subscription agreements for the partnerships, investors such as the plaintiffs were to pay for their ownership units by making a down payment and signing an investor note requiring annual payments to the HanMar partnership over a six-year period and in exchange, *inter alia*, the limited partners were to receive certain "preferred distributions," defined as

> "an amount equal to an annualized 8% return on cash contributed to the Partnership by the Investors. This return is cumulative and shall be paid prior to the payment of all obligations except the principal payments due under the First Note and the minimum payments due under the Second Note."

(Complaint, ¶s 11, 12). Plaintiffs further aver that under § 5.3 of the limited partnership agreements, Mr. Hankin and IREM agreed that payment of the preferred distributions was to be made prior to nine other obligations and that Mr. Hankin personally guaranteed the 8% payments regardless of whether there was sufficient cash flow. (Complaint, ¶s 19–23).

In October, 1987, IREM and Hankin sent to plaintiffs and other limited partners a proposal to consolidate the three partnerships in which the plaintiffs had ownership interests together with four other HanMar partnerships into a single HanMar Master Limited Partnership and to make various other changes in the operation of the limited partnerships. According to the plaintiffs, while there were seven distinct purposes for the proposed exchange, not one of them included subordination of the preferred distributions, modification of § 11.7 of the partnership agreements (which until then required 100% of the investors to approve changes in the amendment process), vesting the General Partner with absolute discretion

to alter the order and priority of disbursements or creating a definition of "cash receipts" that would permit Mark Hankin to collect interest accruals and other monies at real estate settlements prior to paying overdue preferred distributions. (Complaint, ¶s 26, 27). Despite the fact that plaintiffs and other limited partners did not consent to the proposed change, some 75% of the limited partners did and all seven HanMar entities were consolidated into a single HanMar Master Limited Partnership, the Manager was changed to Hankin Management Company, Inc. (of which Mark Hankin is the president and secretary), and various other changes were made affecting the priority of payment of the preferred distributions, the definition of "cash receipts" and altering the provisions of sections 5.3 and 11.7 of the previous limited partnership agreements. Complaint, ¶s 31–34.[1]

In 1991, Hankin advised plaintiffs that there had been an economic downturn in the real estate market that was worsening and not expected to turn around anytime soon. From that point on, the 8% preferred distributions were not made, despite the fact that IREM sent a letter advising that the market had recently turned upward, the vacancy rate had diminished and that the partnership had received an infusion of cash from refinancings and sales of various properties. (Complaint, ¶ 38). By letter dated October 3, 2000, Mr. Hankin advised Martin Brody that the 8% preferred distribution would only be payable after all other obligations of the partnerships were paid. Plaintiffs later learned that under an amendment to the master limited partnership agreement dated January 2, 1991, executed by Mark Hankin alone in his capacity as president and secretary of IREM, the preferred distributions were subordinated to virtually all other payments. (Complaint, ¶ s44–47).

In February, 2001, Martin and Florence Brody filed a Demand for Arbitration with the American Arbitration Association against HanMar Associates, XIV, XVIII and XXI, IREM and Mark Hankin pursuant to § 11.5 of the Limited Partnership articles. Specifically, the Brodys contended that the HanMar partnerships, IREM and Hankin breached the partnership agreements and violated their fiduciary duties by failing to make any of the cumulative preferred 8% distributions to them since 1991 and instead making payments to other, subordinate claimants in this same time frame. The Brodys also claimed that the amendments to the partnership agreements permitting the general partner to unilaterally make future amendments to the master limited partnership agreement was null and void. Following pre-arbitration discovery, the arbitrator held four days of hearings on June 3 and 4, 2002, October 18, 2002 and May 1, 2003 and issued an Award on June 13, 2003. A Petition to Confirm the Award was filed with the Court of Common Pleas of Philadelphia County on September 25, 2003 and remains pending. It is on the basis of this arbitration award that the defendants here base their claims of *res judicata* and/or collateral estoppel. Alternatively, Defendants assert that the plaintiffs' claims are barred by the statute of limitations and that the complaint fails to plead any cause of action upon which relief may be granted.

### Applicable Standards to Rule 12(b)(6) Motions

It has long been the rule that in considering motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the district courts must

---

**1.** These alterations effectively allowed the general partner to unilaterally make amendments to the master limited partnership agreement.

"accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir.2000) (internal quotations omitted). *See Also: Ford v. Schering–Plough Corp.*, 145 F.3d 601, 604 (3d Cir.1998). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *See, Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). In considering a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint but may also consider matters of public record, items appearing in the record of the case and exhibits to the complaint. *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir.1990). Dismissal is warranted "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition Companies, Inc.*, 186 F.3d 338, 342 (3d Cir.1999) (internal quotations omitted). Although it is an affirmative defense, *res judicata* may be raised in a Rule 12(b)(6) motion and such a motion is particularly appropriate if the defense is apparent on the face of the complaint. *Rycoline Products v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir.1997); *Small v. Potter*, Civ. A. No. 01–3108, 2002 WL 27826 at *1, 2002 U.S. Dist. LEXIS 241 at *4 (E.D.Pa. Jan. 10, 2002).

### Discussion

■ Application of the doctrine of *res judicata* is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction. *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). *Res judicata* thus avoids the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id.; Mohammed v. May Department Stores, Co.*, 273 F.Supp.2d 531, 534 (D.Del.2003). *Res judicata* applies to all claims actually brought or which could have been brought in a prior action regardless of whether they were asserted or determined in the prior proceeding. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Small v. Potter*, 2002 WL 27826 at *2, 2002 U.S. Dist. LEXIS 241 at *5.

■ The doctrine of *res judicata* is often analyzed to consist of two preclusion concepts: issue preclusion and claim preclusion. *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir.1990), quoting *Migra v. Warren City School District Board of Education*, 465 U.S. 75, n. 1, 104 S.Ct. 892, n. 1, 79 L.Ed.2d 56 (1984). Issue preclusion has also been referred to as collateral estoppel. *Venuto v. Witco Corp.*, 117 F.3d 754, 758 (3d Cir.1997). Under collateral estoppel or issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior cause of action. *Tyler v. O'Neill*, 52 F.Supp.2d 471, 474 (E.D.Pa.1999), *aff'd*, 225 F.3d 650 (3d Cir. 2000). Claim preclusion or *res judicata* provides that when a court has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Id.*, quoting, *inter alia, Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948). A party may not split a cause of action into separate grounds of recovery and raise the separate grounds in successive lawsuits; a party must raise in

a single suit all the grounds of recovery arising from a single transaction or series of transactions that can be brought together. *Inofast Manufacturing, Inc. v. Bardsley,* 103 F.Supp.2d 847, 849 (E.D.Pa.2000), *aff'd,* 265 F.3d 1055 (3d Cir.2001), citing *Mars, Inc. v. Nippon Conlux Kabushiki–Kaisha,* 58 F.3d 616, 619–620 (Fed.Cir. 1995) and *Gregory v. Chehi,* 843 F.2d 111, 117 (3d Cir.1988). A defendant may thus prevail on the defense of *res judicata* or claim preclusion by showing (1) that there has been a final judgment on the merits in the prior suit; (2) the claims involve the same parties or their privies; and (3) the subsequent suit is based on the same cause of action as the prior suit. *African International Bank v. Epstein,* 10 F.3d 168, 171 (3d Cir.1993); *Small v. Potter, supra.*

▮ In this case of course, we are additionally faced with the question of whether an arbitration award should be given the same preclusive effect as a state court judgment. Generally, *res judicata* rules must sometimes be adapted to fit the arbitration context. *In re Kaplan,* 143 F.3d 807, 815 (3d Cir.1998). Where, however, a party voluntarily submits a dispute to arbitration he is bound by the award where his statements and conduct manifests a clear intent to arbitrate. *Jones v. Schaffer,* Civ. A. No. 86–3733, 1987 WL 15622 at *3, 1987 U.S. Dist. LEXIS 7270 at *10–11 (E.D.Pa. August 12, 1987), citing *Teamsters Local Union No. 764 v. J.H. Merritt & Co.,* 770 F.2d 40 (3d Cir.1985). Thus, an arbitration award, unless and until invalidated, creates or authoritatively declares rights even as a judgment does and further litigation of a claim submitted to an arbitrator is precluded by the entry of an award thereon. *Bank of America*

*National Trust & Savings Association v. Hotel Rittenhouse Associates,* Civ. A. No. 83–2809, 1989 WL 52480 at *4, 1989 U.S. Dist. LEXIS 5415 at *11–12 (E.D.Pa. May 15, 1989), citing, *inter alia, Schattner v. Girard, Inc.,* 668 F.2d 1366, 1368 (D.C.Cir. 1981), *Moran v. Paine, Webber, Jackson & Curtis,* 389 F.2d 242, 245 (3d Cir.1968) and *Nix v. Spector Freight System, Inc.,* 264 F.2d 875, 877 (3d Cir.1959). Furthermore, the preclusive effect of the award also extends to those claims that should have been but were not submitted to the arbitrator. *Id. See Also: The Sports Factory, Inc. v. Chanoff,* 586 F.Supp. 342, 347–348 (E.D.Pa.1984). In other words, a confirmed arbitration award will render those claims that should have been raised at the arbitration *res judicata,* regardless of whether or not they in fact were raised. *Smith v. Denver Food Systems, Inc.,* Civ. A. No. 94–0045, 1994 WL 551561, 1994 U.S. Dist. LEXIS 14400 (E.D.Pa. October 5, 1994).

▮ As the attachments to the defendant's motion to dismiss reflect, the "nature of the dispute" heard by the arbitrator upon demand by the plaintiffs here was whether the HanMar partnerships, IREM and Hankin breached the partnership agreements and violated their fiduciary duties by failing to make any of the cumulative preferred 8% distributions to them since 1991 and instead making payments to other, subordinate claimants in this same time frame and whether the amendments to the partnership agreements permitting the general partner to unilaterally make future amendments to the master limited partnership agreement were null and void.[2] In this action, plain-

---

**2.** Specifically, the Amended Supplemental Description of Nature of Claim gave the following "more complete description of the

'Nature of the Dispute' in the Demand for Arbitration:

> Defendants breached the Agreement entitled "Amendment and Restatement of Ar-

tiffs again bring claims for breach of fiduciary duty and breach of contract and again seek compensatory damages in the amount of the unpaid 8% preferred distributions and declaratory and equitable relief such as to compel defendants to cease their allegedly unlawful practices. In addition, however, plaintiffs also seek relief under the theories of unjust enrichment, conversion and civil RICO, but these claims likewise arose out of the same facts and series of transactions as did the claims for breach of contract and breach of fiduciary duty.[3] After four full days of hearings at which Martin Brody, Mark Hankin and various other witnesses testified and numerous exhibits were admitted, the arbitrator entered an Award on June 13, 2000, denying in large part the Brodys' requests for relief and finding that the actions taken by Hankin and the General Partner, IREM were generally appropriate except as to the $86,189 difference between the Third Note payment in 2000 and the mandatory payment on the Second Note which should have been applied to payment of accrued but unpaid Preferred Distributions and the payment of life insurance premiums on Mark Hankin's life from cash receipts from MLP and not from advances from the General Partner during calendar years 1995, 1996 and 1997. Thus, the arbitrator awarded to plaintiffs their percentage interest of the $86,189 plus their percentage interest of the life insurance payments made in or for the years 1995–1997 by HanMar Associates XIV, XVIII and XXI. Neither IREM nor the Brodys challenged or sought modification of the arbitrator's award and the defendants filed a petition to confirm the award with the Court of Common Pleas of Philadelphia County on September 25, 2003. Under 42 Pa.C.S. § 7341, governing common law arbitration,

> The award of an arbitrator in a nonjudicial arbitration which is not subject to

---

ticles of Limited Partnership of Hanmar Associates XVIII," including the required order of priority of cash distribution payments under Article V thereof and in paragraph 2 of the Managing and Leasing Agreement referenced in said Article V by, *inter alia,* failing to make any of the cumulative preferred 8 percent distributions in that same time period and having also made, out of sales proceeds and refinancing proceeds, payments to subordinated payees when such preferred distributions were in arrears. In doing so, respondents also violated their fiduciary obligations to claimants.

Claimants make the identical claims in regard to the Agreements entitled Amendment and Restatement of Articles of Limited Partnership of Hanmar Associates XIV, and Amendment and Restatement of Articles of Limited Partnership of Hanmar Associates XXI.

If it is determined that the aforesaid agreements were validly amended in 1988, claimants make the same claims in regard to the 1988 HanMar XIV, XVIII, XXI and MLP agreements.

Claimants claim that the recently produced (December 12, 2001) 1991 amendments to the aforesaid agreements are null and void, were adopted at some unknown date in violation of respondents' fiduciary obligations to claimants purportedly pursuant to amendment clauses in the 1988 agreements, which in turn were void for having been adopted in violation of the amendment clauses in the 1983 agreements. Claimants seek an accounting, money damages, and declaratory relief in respect of future entitlements."

3. A determination of whether two lawsuits are based on the same cause of action turns on the essential similarity of the underlying events giving rise to the various legal claims. *Churchill v. Star Enterprises,* 183 F.3d 184, 194 (3d Cir.1999). The courts should therefore look to whether the acts complained of and the demand for relief are the same; whether the theory of recovery is the same; whether the witnesses and documents necessary at trial are the same and whether the material facts alleged are the same. *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 984 (3d Cir.1984).

Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

Further,

"[o]n application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration) the Court shall enter an order confirming the award and shall enter a judgment or decree in conformity with the order ..."

42 Pa.C.S. § 7342(b). Given that this statute dictates that an arbitrator's award is binding and cannot be vacated or modified unless a showing of fraud, misconduct, corruption or other irregularity can be made and that an order confirming an arbitration award **shall** be entered upon a party's application where more than 30 days has elapsed without challenge, we find that whether or not the Common Pleas Court has yet to formally confirm the award, it must do so to comply with the foregoing provisions of the Pennsylvania Uniform Arbitration Act. Thus, we believe that the arbitration award rendered in this case constitutes a final judgment on the merits in a prior suit based on the same causes of action.

Although Mr. Hankin was dismissed as a party in the proceedings before the arbitrator because he was not a signatory in his individual capacity to the partnership agreements, he was at all relevant times the president, vice president and secretary of IREM and testified as the corporate representative on its behalf at the arbitration hearings. Privity is said to exist where a party adequately represented the nonparties' interests in the prior proceeding. *Inofast,* 103 F.Supp.2d at 849, citing *Berwind Corporation v. Apfel,* 94 F.Supp.2d 597, 609 (E.D.Pa.2000). We therefore find that Mr. Hankin is and was in privity with the general partner, IREM in both the arbitration proceedings and in the instant case. Accordingly, we find that there is sufficient identity of parties and causes of action to invoke the bar of *res judicata.* The defendants' motion to dismiss shall therefore be granted and the complaint dismissed with prejudice pursuant to the annexed order.